Pamela WALKER, Plaintiff–Appellee,

v.

AMERICAN HOME SHIELD LONG TERM DISABILITY PLAN; Unum Life Insurance Company of America, Defendants–Appellants.

No. 97–55503.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1998.

Vacated Dec. 22, 1998.

Resubmitted June 4, 1999.

Filed June 15, 1999.

Russell G. Petti, Stacey R. Turner, Bannan, Green, Smith, Frank & Rimac, Los Angeles, California, for the defendants-appellants.

Ronald Dean, Pacific Palisades, California, for the plaintiff-appellee.

Before: BRUNETTI, FERNANDEZ, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

This case requires resolution of whether the *de novo* standard of review set out in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) for an insurance disability case brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), encompasses both plan interpretations and factual determinations. More specifically, we review the district court's grant of summary judgment in favor of Pamela Walker, who claimed that she was unable to work due to stress, fatigue, and pain, all symptoms of the elusive disease of fibromyalgia. UNUM Life Insurance Company of America and American Home Shield Long Term Disability Plan (collectively "UNUM") appeal, arguing that the standard of review should be bifurcated and that, even if plan interpretations are reviewed *de novo,* an abuse of discretion standard should govern factual determinations. UNUM also claims that the district court erred in admitting additional expert medical evidence and granting judgment in

favor of Walker rather than UNUM. We reverse the grant of summary judgment and remand for further proceedings in light of our en banc decision in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999).

## FACTUAL AND PROCEDURAL BACKGROUND

As an account executive for American Home Shield, Pamela Walker sold home warranty insurance to home buyers through real estate agents. Each day her job required her to drive to at least 12 different real estate offices throughout the Los Angeles area, make multiple telephone calls to customers and attend various meetings. In April 1990, Walker stopped working and applied for long-term disability benefits due to extreme pain, fatigue and stress arising from her job.

Virtually all of the seven doctors who examined Walker or her file agreed that Walker had fibromyalgia, but the doctors disputed the extent to which Walker's fibromyalgia affected her ability to work. Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches. Arthritis Foundation Pamphlet, Fibromyalgia 6–8 (1989).[1] Stress is both a symptom of fibromyalgia and an exacerbating factor. Because proving the disease is difficult and no objective test exists, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims:

> [I]t is difficult to determine the severity of [a claimant's] condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the claimant] is one of the minority.

*Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) (internal citations omitted).

Walker was eligible for disability benefits under a UNUM disability policy that provides for disability benefits upon "proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician." Eligibility for disability requires proof that "the insured cannot perform each of the material duties of his regular occupation." To receive on-going benefits, the insured must provide "proof of continued disability."

Before making its initial decision on Walker's claim, UNUM queried American Home Shield whether Walker could work part-time or work without the extensive traveling. After her employer rejected these options, UNUM granted Walker's claim for disability benefits. UNUM based its decision on Walker's application and reports from three examining doctors, but only her chiropractor concluded that Walker was totally disabled from performing her occupation.

UNUM later reconsidered its decision to award benefits after learning that Walker was pursuing a new career-modeling. In response to a request for supplemental information, Walker's doctor explained to UNUM that modeling once a week was much less stressful than working five days a week as a traveling account executive.

Although UNUM's claims review committee believed that Walker had "severe fibromyalgia," an internal UNUM memorandum shows that UNUM decided "to be aggressive with this claim." UNUM then referred Walker to another physician who issued an opinion that Walker should avoid her occupation due to stress but be physically active by returning to work in her occupation. Based largely on this report, UNUM informed Walker that her disability benefits would be terminated in 30 days if she did not provide proof of her disability. As proof of Walker's continuing dis-

1. We previously relied on this pamphlet in *Lang v. Long–Term Disability Plan of Sponsor* *Applied Remote Tech., Inc.,* 125 F.3d 794, 796 (9th Cir.1997).

ability, her doctor submitted letters to UNUM explaining Walker's "chronic fibromyalgia."

UNUM subsequently terminated Walker's continuing disability benefits, stating in the termination letter that Walker was not disabled because (1) she was physically capable of performing her job, (2) even if she were disabled, she failed to provide objective medical evidence of a disability, and (3) even if she were disabled due to stress, she was not receiving treatment for stress.

Walker appealed the termination of her benefits and UNUM referred Walker to another examining physician and appointed yet another doctor to review her file. Each of these physicians concluded that Walker could work full-time but with certain restrictions.

Based on UNUM's decision not to reinstate her benefits, Walker filed suit under ERISA for wrongful termination of disability benefits. The parties filed cross-motions for summary judgment. The district court determined that under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the appropriate standard of review of the plan administrator's decision was *de novo.* Because of the difficulty of reviewing the administrator's decision *de novo* where the medical evidence was not "particularly clear," the district court appointed an independent expert, Dr. Daniel Wallace, the Clinical Chief of Rheumatology at Cedars–Sinai Medical Center in Los Angeles, a Clinical Professor at UCLA School of Medicine, former Chairman of the Fibromyalgia Subcommittee of the Arthritis Foundation and an author of numerous publications on fibromyalgia.

Dr. Wallace examined Walker and concluded that she had fibromyalgia and was totally disabled from performing her job. Based upon the entire record, including Dr. Wallace's report, the district court granted Walker's motion for summary judgment. UNUM appeals from this judgment.

## DISCUSSION

## I. STANDARD OF REVIEW

In an ERISA benefits case, the court of appeals must consider the standard of review at two levels: the district court's review of the plan administrator's decision and the court of appeals' review of the district court's determination.

At the first level, UNUM urges this Court to complicate further the standard of review issue by reviewing the plan administrator's factual determinations under a separate, more deferential standard from that applied to interpretations of plan language. We decline to do so. When, as here, the plan language requires *de novo* review, the district court's review encompasses both plan interpretation and factual determinations.

The plan language is the starting point for addressing the standard of review for denial of benefits under ERISA. In *Firestone,* the Supreme Court held that review is *de novo* unless the plan confers discretionary authority upon the plan administrator. 489 U.S. at 115, 109 S.Ct. 948. If discretionary authority is conferred, the administrator's decision is reviewed under the abuse of discretion standard. *Id.* at 111, 109 S.Ct. 948. Before the district court, UNUM conceded that the plan language at issue did not grant discretionary authority to the administrator, but on appeal UNUM now switches its position and argues that the plan granted discretionary authority to the administrator. Because UNUM waived this issue below, we need not consider it. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

UNUM also argues that, for policy reasons, a plan administrator's factual determinations should always be subject to the more deferential abuse of discretion review, regardless of whether the plan language confers discretion on the administrator. UNUM properly raised this argument in the district court and on appeal. Although this question was raised

in a prior case, we declined to reach the issue because the parties did not contest any factual determinations. *Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 942–43 n. 1 (9th Cir.1998). Here, the denial of benefits included contested factual determinations. We reject UNUM's argument because it is incompatible with *Firestone* (and our decision in *Kearney*), it is not supported by UNUM's plan language and policy and practical concerns favor the application of a single standard of review for plan administrators' decisions.

Resolution of this issue rests first on the Supreme Court's holding in *Firestone*. In divining the Supreme Court's meaning, we start with the statement of its holding:

> *[W]e hold* that a denial of benefits under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (emphasis added).

Despite this clear holding, UNUM argues that *Firestone* left unresolved the standard of review for factual determinations. We disagree. The Supreme Court did not distinguish between plan interpretations and factual determinations in its holding. The holding does not suggest that a decision to deny benefits based on factual determinations, as opposed to the terms of the plan, should be reviewed under a different standard. Indeed, the Supreme Court's reference to denials based on the determination of "eligibility for benefits" implies the opposite. In practice, eligibility determinations are often fact-intensive, involving whether the claimant suffers from a disease or disability and whether the claimant's symptoms or disabilities restrict her ability to perform her job or any other work.

Other language in *Firestone* supports the view that the Supreme Court intended a unitary standard for the district court's review of benefit determinations under 29 U.S.C. § 1132(a)(1)(B). For example, in framing the question to be reviewed, the Court stated: "First, we address the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA." *Id.* at 105, 109 S.Ct. 948. The Court went on to note that "ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Id.* at 109, 109 S.Ct. 948. The Court made repeated references to review under this specific statutory section, such as its statement that "[i]n determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law." *Id.* at 111, 109 S.Ct. 948. And, in addressing whether the standard of review changes depending on plan funding, the Court again set out a single standard of review: "Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of [funding]." *Id.* at 115, 109 S.Ct. 948.

In short, the Supreme Court's holding that "a denial of benefits under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard," *id.*, means that the district court's entire review-both legal and factual-is *de novo*. The majority of federal appellate courts that have considered the issue concluded, as we do, that *Firestone* did not leave open the issue of whether factual determinations should be reviewed under a different standard than plan interpretations. *See Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433, 435 (6th Cir. 1997); *Ramsey v. Hercules Inc.*, 77 F.3d 199, 204 (7th Cir.1996); *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1183–84 (3d Cir.1991); *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1213–14 (4th Cir. 1990); *but see Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1556 (5th Cir.1991).

Although we read *Firestone* as stating a clear holding, we acknowledge but disagree with the Fifth Circuit's view in

*Pierre* that other language early in the opinion limits the holding's reach to benefit denials based on plan interpretations: "The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." *Firestone,* 489 U.S. at 108, 109 S.Ct. 948; *see Pierre,* 932 F.2d at 1556. This sentence must be read in tandem with the sentence that follows: "We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." *Firestone,* 489 U.S. at 108, 109 S.Ct. 948. Because the Supreme Court recognized ERISA as providing "a panoply of remedial devices," *id.,* the limiting language logically means that *Firestone* was intended to address the standard of review only under a single section of ERISA, § 1132(a)(1)(B), not under other remedial provisions, such as § 1132(a)(3) or § 1132(a)(5), which provide for injunctive relief. The so-called limitation does not restrict *de novo* review to plan interpretations.

▆▆▆ Nor does the plan itself provide a basis for UNUM's argument. *Firestone* is based on the principles of trust law that "make a deferential standard of review appropriate when a trustee exercises discretionary powers." *Id.* at 111, 109 S.Ct. 948. When an ERISA plan administrator cannot exercise discretionary power because the plan confers none, the more deferential standard of review is inappropriate. *See Kearney,* 175 F.3d at 1088–89. Because the UNUM plan at issue does not state or imply that the administrator's factual findings or determinations of eligibility are entitled to deference, we will not read such terms into the plan.

Even if the Supreme Court in *Firestone* left open the question of whether factual determinations are subject to review *de novo* or under an abuse of discretion standard, pragmatic and policy considerations favor a single standard of review by the district court. As a practical matter, fac-

tual findings and plan interpretations are often intertwined. For example, determining eligibility for disability benefits almost always involves an interpretation of the plan's term "disabled," but it also involves the fact of whether the claimant is disabled. If review were bifurcated at the district court level, we predict an unnecessary cascade of litigation over whether an administrator's action was a plan interpretation or a factual determination.

Unless mandated by the plan, no policy justification exists to accord a plan administrator's factual findings the deference generally accorded to other fact-finders, such as courts and administrative agencies. ERISA plan administrators are not government agencies, which are "frequently granted deferential review because of their acknowledged expertise," *Luby,* 944 F.2d at 1183, nor are they trial courts subject to a panoply of constitutional, statutory and procedural strictures. In light of these differences, absent a grant of discretionary authority in the plan, the district court's *de novo* review of factual determinations by plan administrators is "consistent with *Firestone* and its emphasis on the goals of ERISA: to protect the interests of plan members and their beneficiaries." *Id.* at 1183–84.[2]

## II. APPOINTMENT OF AN INDEPENDENT EXPERT

▆▆ The district court did not abuse its discretion in appointing an independent medical expert to help evaluate medical evidence. We have previously held that the district court has discretion to consider evidence beyond the record where "additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 944 (9th Cir.1995). *Kearney* reaffirmed the holding of *Mongeluzo. See* 175 F.3d at 1090–91.

---

**2.** We need not address Walker's argument that UNUM's alleged conflict of interest trig-

gers a heightened standard of review because *de novo* review applies.

■ Armed with the authority to consider additional evidence in its de novo review, the district court also has the discretion to appoint an expert *sua sponte* under Federal Rule of Evidence 706(a):

> The court may on its own motion ... enter an order to show cause why expert witnesses should not be appointed.... The court ... may appoint witnesses of its own selection.

The district court followed the dictates of Rule 706(a) by issuing an order to show cause why an expert should not be appointed, ordering briefing, holding a hearing and then appointing an expert of its own selection. Both the consideration of additional evidence and the appointment of an expert under Rule 706 are reviewed for abuse of discretion. *Mongeluzo,* 46 F.3d at 940; *Students of Cal. Sch. for the Blind v. Honig,* 736 F.2d 538, 549 (9th Cir.1984), *vacated on other grounds,* 471 U.S. 148, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985).

UNUM argues that additional evidence is not "necessary" because the record was sufficiently developed and the plan administrator made no error of law, unlike the plan administrator in *Mongeluzo.* UNUM mistakenly characterizes the district court as viewing the evidence in equipoise. Instead, the district court's statement that the medical testimony was not "particularly clear" suggests that the court found the evidence concerning fibromyalgia to be confusing and conflicting. This case presented the district court an appropriate occasion to appoint an independent expert to assist the court in evaluating contradictory evidence about an elusive disease of unknown cause. *See generally McKinney v. Anderson,* 924 F.2d 1500, 1511 (9th Cir.) (reversing decision that expert could not be appointed; suggesting court appoint expert to analyze health effects of secondary cigarette smoke), *vacated on other grounds sub nom. Helling v. McKinney,* 502 U.S. 903, 112 S.Ct. 291, 116 L.Ed.2d 236 (1991).

## III. GENUINE ISSUE OF MATERIAL FACT

■ We address the merits of Walker's disability claim at the second level of review, our review of the district court. Prior to *Kearney,* the procedure in ERISA disability cases was unclear and district courts often granted summary judgment in the face of conflicting evidence. In light of the decision in *Kearney,* however, remand for a bench trial is now required if there is "a genuine issue of material fact as to whether [the party seeking disability benefits under ERISA] is disabled in the sense defined by the policy." *Kearney,* 175 F.3d at 1093.

■ Although most of the seven doctors who examined Walker or reviewed her file agreed that she had fibromyalgia, they disagreed as to whether the disease rendered her totally disabled from doing her regular job. Both Walker's treating chiropractor and one of the nation's leading experts on fibromyalgia found that Walker's fibromyalgia prevented her from working as an account executive. Some of the physicians appointed by UNUM concluded that Walker could continue to work with some restrictions, although these restrictions would not necessarily alleviate the circumstances that led Walker to claim disability. One of the physicians appointed by UNUM who examined Walker concluded that Walker was capable of working, but simply unwilling to do so; another physician appointed by UNUM implied that Walker was not disabled in his conclusion that she had a "sense of invalidism" fostered by her treating physician. The remaining physicians who examined Walker or reviewed her file did not reach a conclusion on the question of whether Walker was totally disabled. We reverse because there is a genuine issue of material fact as to whether Walker was "disabled" as defined by the policy, *i.e.,* whether she could not "perform each of the material duties of [her] regular occupation." We remand for further proceedings consistent with *Kearney.*

We need not reach the issue of attorneys' fees because "the district court will necessarily revisit the issue of attorneys' fees after the case is concluded and exercise its discretion in the different circumstances then existing." *Kearney,* 175 F.3d at 1094. Each party shall bear its own costs on appeal.

**REVERSED AND REMANDED**