John L. ELLIS, Plaintiff,

v.

**EGGHEAD SOFTWARE SHORT–TERM AND LONG–TERM DISABILITY PLANS, Defendants.**

No. CS–98–0363–JLQ.

United States District Court, E.D. Washington.

July 16, 1999.

Kenneth Isserlis, Lee, Michaud & Isserlis, P.S., Spokane, WA, for plaintiff.

Thomas W. McLane, Brian Ernst, Paine Hamblen Coffin Brooke & Miller, LLP, Spokane, WA, for defendant.

## MEMORANDUM OPINION ON THE STANDARD OF REVIEW

QUACKENBUSH, Senior District Judge.

On June 10, 1999, this court heard the parties' cross-motions for summary judgment. This court denied the cross-motions and ordered further briefing on the standard and scope of review. The parties have briefed the court and the court now issues its opinion on the standard of review.

### I. The Relevant Facts

Plaintiff John Ellis began working for Egghead Software in December 1994 as a

project manager. (Administrative Record 15) His primary duty was to design, order, and install all of the fixtures at new Egghead stores. (A.R.15, 16, 103)

In February 1996, Ellis began to experience discomfort in his joints and muscles that kept him from participating in his usual activities. (A.R.6) Ellis received treatment for his condition from Physician's Assistant Jefferey Smith of the Rockwood Clinic, who diagnosed Ellis as having fibromyalgia in June 1996. (A.R.72, 75)

Throughout 1996 and early 1997, Ellis was unable to keep a regular schedule and missed a substantial amount of work due to his condition. (A.R.19) Ellis' supervisor indicated in a December 1997 letter that Ellis was kept on as an employee only because Egghead was experiencing financial difficulties and was therefore opening fewer stores and could cover for Ellis' absence. (A.R.19)

On January 31, 1997, Egghead informed Ellis he would laid off effective March 31, 1997. (A.R.58) Ellis actual final day of employment was March 14, 1997. (A.R.47) On March 29, 1997, Ellis applied for disability benefits under the Egghead Software Short Term Disability and Long Term Disability Plans. (A.R.26) Those forms, signed February 28, 1997, anticipated that Ellis would become disabled as of March 14, 1997. (A.R.102)

The Egghead Software Short Term Disability Plan and the Egghead Software Long Term Disability Plans (the STD and LTD Plans, respectively) provide disability benefit coverage to all full-time Egghead employees. (Plaintiff's Supplement to ERISA Record (P.S.) 128, 155) The STD Plan, which is funded by Egghead and administered by Continental Casualty Company ("CNA"), provides disability benefits for the first 13 weeks of "Total Disability." (P.S. 128, 135, 136). The LTD Plan, which is an insurance policy issued and administered by CNA, provides disability benefits for any period of "Total Disability" beyond the first 90 days. (P.S. 155, 156)

The Plans contain virtually identical definitions of "Total Disability." In order to be considered totally disabled, a participant must be continuously unable to perform the substantial and material duties of his regular occupation, under the regular care of a licensed physician, and not gainfully employed in any occupation for which he is or becomes qualified by education, training, or experience. (A.R.130, 157)

On April 25, 1997, Gloria Smith, a CNA disability specialist, denied Ellis' claim for benefits under the STD Plan without reference to Ellis' simultaneous claim under the LTD Plan. (A.R.60–62) The denial letter informed Ellis that "the medical data contained in your file fails to document any objective medical evidence of a disabling physical impairment" and pronounced that *"subjective complaints shall not alone be conclusive evidence of disability."* (emphasis in original)

Responding through counsel, Ellis asked what policy provision required proof of objective medical evidence and what would serve as objective medical evidence of fibromyalgia. (A.R.45) CNA did not point to any plan provisions but indicated that it follows the Arthritis Foundation criteria that rely heavily on the diagnosis of trigger points. (A.R.41)

On May 16, 1997, Ellis appealed the denial of his claim. While the appeal was pending, he submitted additional evidence of disability, including a detailed June 26, 1997 report by physician's assistant Smith that stated Ellis "had significant pain at trigger points that are classic for fibromyalgia." (A.R.22)

CNA denied Ellis' appeal on August 12, 1997, without reference to the LTD Plan. (A.R.31) The letter CNA sent to Ellis' counsel stated that it had denied his claim because "the medical documentation submitted does not support the severity or decline of Mr. Ellis' health." (A.R.32). In a separate letter reporting the decision to Egghead, CNA stated it had denied Ellis' claim because "the medical records lacked objective findings to support the severity

of a physical or mental condition that would preclude Mr. Ellis from working." (A.R.40)

Although CNA's denial of the appeal stated that it terminated the ERISA review process for the claim, Ellis' counsel filed a second appeal on July 15, 1998 that included new documentation of Ellis disability, including a June 23, 1998 vocational evaluation. (A.R.3) CNA refused to render a decision on this appeal. (A.R.1)

## II. Current Procedural Posture

In March 1999, the parties filed cross-motions for summary judgment. Near the end of the briefing of the motions, the Ninth Circuit filed its en banc decision in *Kearney v. Standard Insurance Company,* 175 F.3d 1084 (9th Cir.1999) (en banc).

At the June 10, 1999, hearing on the motions, this court denied both motions for summary judgment and instructed the parties to brief the standard of review in light of the new *Kearney* opinion. The court indicated that when the parties were prepared to proceed, this court would determine the proper standard of review and, if necessary, hold a de novo "trial on the merits" in accordance with the en banc decision in *Kearney.*

The parties provided us with the requested briefing. This court has three procedural issues to face before it can decide the merits of this case: the standard of review, the extent of the record, and whether the court should consider additional evidence outside the record.

## III. The Standard of Review

■■■ A trial court reviews a denial of ERISA benefits under a de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan."

*Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80. If the plan grants the administrator such discretion, a trial court must review the administrator's decision for an abuse of discretion, *id.,* unless the administrator's review was tainted by a conflict of interest. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322 (9th Cir.1995).

The Plans do not contain identical provisions regarding the amount of discretion the administrator has. The LTD Plan provides that "benefits will be paid monthly immediately after [CNA receives] due written proof of loss," while the STD Plan states that CNA "will make the determination of the Employee's eligibility for benefits and validity of Total Disability and will calculate the amount payable." (A.R.146)

The defendants have apparently taken the position that because CNA administers both Plans, the language of the STD Plan should apply to the LTD Plan as well.[1] However, despite their common administration and common purpose of providing benefits to employees, the plans are independent of each other. They provide for distinct funding mechanisms, they provide disability benefits for different time periods, and, most importantly, each Plan has a unique plan document and summary plan description. The standard of review under each must be analyzed separately.

### 1. The LTD Plan

■■■ The LTD Plan's "due written proof of loss" clause does not confer discretion on CNA. In *McCoy v. Federal Insurance Co.,* 7 F.Supp.2d 1134, 1140 (E.D.Wa.1998), this court held that "the use of the word 'due' in 'due proof of loss' does not even suggest discretion."

1. The briefing of the Defendants suggests that the Plans actually have the same language. See, e.g., Defendants' Reply to Plaintiff's Supplemental Memorandum, at 1 ("The issue squarely before this court is whether the [STD Plan and the LTD Plan] granted CNA discretion by providing CNA with [the language in the STD Plan].") See also Defendants' Supplemental Memorandum at 1–2. The court finds the Defendants' briefs erroneous, if not misleading, on this key point, considering that the language of the two Plans is critically different, *supra.*

Although this court relied on the panel decision in *Kearney v. Standard Insurance Co.*, 144 F.3d 597 (9th Cir.1998), *vacated*, 152 F.3d 1098 (9th Cir.1998) to reach its conclusion, the en banc decision supports *McCoy*. The *Kearney* en banc opinion found that the phrase "satisfactory written proof" was too ambiguous to confer discretion on an administrator. *Kearney*, 175 F.3d at 1089–90. "Satisfactory" at least implies that the proof must be satisfactory to someone; "due" leads nowhere and does not convey discretion with more certainty than the *Kearney* language. The proper standard of review under the LTD Plan is de novo.

### 2. The STD Plan

■ The STD Plan's language requires a more complex analysis. Although the language confers discretion on CNA, the standard of review in this case is nonetheless de novo because the evidence shows that CNA's decision was tainted by a conflict of interest.

The STD Plan states that CNA "will make the determination of the Employee's eligibility for benefits and validity of Total Disability and will calculate the amount payable." This language, while it does not explicitly refer to "discretion," tracks *Firestone*, which creates a presumption that abuse of discretion review is proper when the plan terms "give ... the administrator or fiduciary discretionary authority to determine eligibility for benefits...." *Firestone Tire and Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948 (emphasis added).

The Ninth Circuit has held that substantially similar language conferred discretion on the plan administrator. In *Eley v. Boeing Co.*, 945 F.2d 276 (9th Cir.1991), the court considered a plan that said the plan administrator "shall determine the eligibility of a person for benefits under a plan" and that the plan administrator "retains final authority and responsibility for the Plan and its operation." *Id.* at n. 2. The court held that this language clearly satisfied the *Firestone* standard for conferring discretion.

Following *Eley's* holding, the Ninth Circuit also found a grant of discretion where the plan read, "the determination ... will be made by [the plan administrator] upon consideration of whether the new position ... has responsibilities similar to those of your other position." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). This language "clearly placed on [the plan administrator] the ultimate responsibility" and put the plan "beneficiaries on notice that [the plan administrator] had discretion." *Id.* at 1324, 1325.

The language in the STD Plan, aside from being nearly identical to that at issue in *Eley*, made it clear that CNA had the discretion to determine who was eligible for benefits. A participant who read the documents would have more than adequate notice that CNA had the authority and discretion to determine entitlement to benefits.

Ellis argues that the clause is nonetheless ambiguous and ineffective after *Kearney* because it could be read to grant discretion over only "ministerial" tasks. According to the plaintiff, the LTD Plan could be read to give CNA authority to determine only threshold issues of eligibility, such as whether a participant was excluded from coverage because he became disabled during a war. Plaintiff's Reply to Defendant's Supplemental Memorandum, C.R. 34, at 6–7. Under this reading, CNA had discretion to decide preliminary issues, but not the substance of the claim.

Ellis' suggestion misses the mark because he loses sight of why the *Kearney* ambiguity was material. The *Kearney* court was concerned with ambiguities that made it unclear if a plan administrator was supposed to follow an objective standard or use its own discretion in deciding benefit claims. "Satisfactory written proof" could mean either. *Kearney*, 175 F.3d at 1089–90. The STD language, on the other hand, provides that CNA "will make the determination of ... validity of Total Dis-

ability." This language does not create a doubt about who has the authority to make the decision, nor does it raise the possibility that CNA must follow an objective standard. It also does not give rise to the distinction plaintiff draws between preliminary and substantive issues of eligibility.

*Kearney* does not affect unambiguous grants of discretion. *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir.). CNA had discretion to determine whether a participant is entitled to benefits.

 The analysis does not end here, however. Even when a plan grants discretion, a plan administrator may not enjoy abuse of discretion review if a conflict of interest tainted its review of a particular claim. *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322 (9th Cir.1995). In order to receive a more favorable standard of review, a plaintiff must show first that there was an apparent conflict because the administrator was also the party responsible to the pay the claim, and then the plaintiff must produce material, probative evidence of an actual conflict that the defendant cannot effectively rebut. *Id.* at 1322–23.

At first glance, there is no apparent conflict. The STD Plan is funded solely by Egghead assets, yet Egghead has delegated its administrative responsibilities to CNA. If the STD Plan were the only plan at issue, there would be no question that CNA enjoys abuse of discretion review.

Yet CNA did not rule on Ellis' claim under the STD Plan in isolation. Ellis submitted his claim on a form entitled "Short Term/Long Term Disability," which served to make a claim under both Plans. (A.R.102) The Plan's virtually identical definition of disability facilitated this joint administration—if a participant was disabled for the purposes of the STD Plan, he was disabled under the terms of the LTD Plan, as well. CNA has an apparent conflict of interest under the LTD Plan because it is both the insurer and administrator. By extension, it also had an apparent conflict of interest under the STD Plan because a favorable decision under that Plan would bind it to pay under the LTD Plan.

· The mere appearance of conflict is insufficient to alter the standard of review on its own. Ellis must also show that the conflict actually affected the administrator's judgment. *Atwood*, 45 F.3d at 1323. The Ninth Circuit has recently found the following to be sufficient evidence of an actual conflict:

1) The plan administrator initially held the participant was disabled but did not have a physical condition. Upon receiving evidence that the participant suffered from fibromyalgia, the administrator denied her claim on the basis that she would have to prove the fibromyalgia was disabling. *Lang v. Long–Term Disability Plan*, 125 F.3d 794, 799 (9th Cir.1997).

2) The plan administrator failed to follow its own policies with regard to long-term disability claims and neglected ERISA's mandatory claim procedures. *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109–12 (9th Cir.).

*Lang* and *Friedrich* focused on procedural inconsistencies. In *Lang*, it was a change in required proof after the receipt of evidence the complied with the initial requirement. In *Friedrich*, it was a failure to follow established policies and procedures. Here, there is evidence of both varieties.

When Ellis appealed the initial denial of his claim, he asked CNA what would suffice as "objective evidence" of his disability. CNA responded that it followed the Arthritis Foundation's criteria and emphasized that the presence of "trigger points" was key to its analysis. While the appeal was still pending, Ellis submitted a medical report that explicitly stated Ellis had all the symptoms of fibromyalgia, including trigger points. Yet when CNA denied Ellis' appeal, it contended that Ellis had still failed to provide "objective evidence" of disability. CNA erected a "moving obstacle" similar to that in *Lang;* CNA changed its position only after receiving medical

reports that complied with its initial requirement. Ellis has met his burden of production.

CNA also exhibited the *Friedrich* variety of conflict simply by requiring "objective evidence" of fibromyalgia. Fibromyalgia is a completely subjective disease that nonetheless can give rise to total disability. *Walker v. American Home Shield Long Term Disability Plan,* 180 F.3d 1065, 1066–67 (9th Cir.), *Lang,* 125 F.3d at 796, 799. CNA recognized this and wrote to Ellis that "the condition is subjective in nature" and stated that it followed the Arthritis Foundation criteria, which rely solely on subjective factors. (A.R.41) By requiring objective evidence, CNA contravened its own policies on fibromyalgia claims and completely ignored the nature of the condition. Moreover, the Plan documents do not require claimants to provide objective evidence of a disability. CNA's disregard for its own policies and the Plans is further evidence of an actual conflict under *Friedrich.*

When a plaintiff offers such evidence, a defendant has an opportunity to rebut the presumption of actual conflict. The defendants have not offered any rebuttal. The proper standard of review is de novo as to both Plans. *Friedrich,* 181 F.3d 1105, 1107–08.

## IV. Conclusion

The court finds that the appropriate standard of review under both the STD and LTD Plans is de novo. The court has scheduled a telephonic conference with counsel on July 20, 1999, at 1:30 p.m. to discuss the proper scope of review and to schedule a prompt trial date.