Diane DAMES, Plaintiff–counter–
defendant–Appellant,

v.

PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, Defendant–counter–claimant–Appellee.

No. 00–35258.

D.C. No. CV 98–01397–JMS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 2001.

Decided May 17, 2001.

Before GOODWIN, GREENBERG,* and RAWLINSON, Circuit Judges.

MEMORANDUM **

Diane Dames appeals a summary judgment which denied benefits under her ERISA long-term disability insurance plan. The district court construed the contractual documents, reviewed the medical reports, and concluded that Paul Revere had not "wrongfully terminated" her benefits for disability by arbitrarily nullifying a longer benefit period for a physical cause of disability and substituting a shorter benefit period for a mental cause of disability. We affirm.

Dames worked as an office manager at Image Builder Software, Inc. After complaining that she was sexually harassed at work, Dames sought medical attention from Dr. Barbara Graham, an internist. Dr. Graham concluded that Dames was experiencing insomnia and "situational depression" due to "severe psychological stressors" at work. She recommended a six-week leave of absence and prescribed Paxil, an anti-depressant medication.

While continuing on leave, Dames again visited Dr. Graham, who diagnosed: "Insomnia secondary to severe psychological stressors. Her situational depression is deepening." She recommended that Dames begin treatment with a mental therapist and continue taking anti-depressants.

In October 1995, Dames made a claim for disability benefits under her employ-

---

\* The Honorable Morton I. Greenberg, United States Circuit Judge for the Third Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

er's disability insurance policy issued by Paul Revere. Dames's claim form stated that her disability stemmed from "insomnia/stress." In connection with the claim, Dr. Graham diagnosed situational depression, and cited "DSM–IV code 309", which covers "adjustment disorders with depressed mood." Diagnostic and Statistical Manual of Mental Disorders (4th ed.) at 623. Paul Revere notified Dames of its "conditional approval" of her request for long-term disability benefits, and began paying benefits from October 31, 1995.

In November 1995, Dames complained of numbness and tingling in her left pinky finger and left anterior shin. Neurologist Bradley Bergquist examined Dames and diagnosed a "left ulnar neuropathy," a disease of the left ulnar nerve. Dr. Graham agreed that "she has an ulnar neuropathy" and that she still suffered from insomnia and situational depression. She extended Dames's leave of absence from work through the end of November. On November 13, 1995 Dames visited another neurologist, Dr. David Dine. She complained of numbness and itchiness in her left arm and leg, blurred vision, and headaches. Dr. Dine made no diagnosis. When Dames did not return to work after her medical leave of absence expired, Image Builder fired her.

In December 1995, Dames began treatment with Carylee Eaton, a clinical social worker. Dames reported that she was feeling inadequate, angry and depressed, and that she slept poorly and had nightmares about her employer. She also reported pain in her left hand and leg.

In February 1996, Paul Revere conditionally approved Dames's claim for disability benefits, and paid benefits to March 1, 1996. Paul Revere told Dames that its approval of her claim was subject to the policy's 24–month limit on benefits for disability "caused or contributed to by a psychiatric disorder."[3] Dames did not then dispute the conditional approval for the 24 months.

In April 1996, Dr. Guy Paltrow performed a psychiatric evaluation of Dames, who complained of insomnia, headaches, loss of appetite, nausea, sparkles before her eyes, and a history of numbness in her left arm and leg. After a comprehensive evaluation and several tests, Dr. Paltrow diagnosed Dames with "Post Traumatic Stress Disorder." Dr. Paltrow stated that Dames's psychiatric symptoms rendered her unable to perform one or more of the important duties of her job. He recommended psychiatric treatment. This report was consistent with psychiatric disability but did not discuss the effect of Dames' physical problems on her disability.

During 1996 and 1997, Dames continued to see Dr. Paltrow. Dr. Paltrow sent a statement to Paul Revere monthly. Each statement contained the same diagnosis: (1) post-traumatic stress disorder and (2) psychological factors affecting medical condition. None of the statements attributed Dames' disability to physical sources. One narrative statement from January 1997 mentioned Dames' arm and leg pains, but did not diagnose their sources or state that they made her disabled. Paltrow's July 1997 report to the State of Oregon Depart-

---

**3.** The policy's "Other Limitations" section stated:

> For any disability which is caused or contributed to by a psychiatric disorder... benefits are payable for up to twenty-four months whether or not [the employee] is hospital confined. After twenty-four

months, subject to all other policy provisions, we pay benefits only if [an employee] continues to be hospital confined due to the disability, and for up to three months after the date the employee is no longer confined.

ment of Human Resources reiterated the diagnosis.

A month before the expiration of the 24–month benefit period, Dames for the first time claimed that she also had a physical disability. She said that she had been experiencing left arm, hand, and leg pain since August 1995, and had sought treatment for the problems before she was fired in November 1995. She stated that she had been unable to get treatment or a diagnosis thereafter due to her lack of medical insurance.

In October 1997, Paul Revere notified Dames that her benefits were being terminated, and Dames appealed. She wrote to Paul Revere that she was disabled by fibromyalgia.[4] She included a report from Dr. Gary Sultany confirming that she had fibromyalgia, but expressing no opinion whether fibromyalgia was disabling.

A rheumatologist, Dr. Barkhuizen examined Dames in October 1997. In his "assessment" of her condition, he wrote:

> This patient has widespread pain, multiple somatic complaints and multiple tender points compatible with the fibromyalgia syndrome. A clearly stressful event preceded many of her symptoms associated with the sexual harassment and law suit. She has a significant element of the restless leg syndrome and has had major difficulties in functioning related to chronic pain, fatigue, and cognitive difficulties as well as multiple somatic complaints.

Again, a medical consultant had examined her but did not discuss whether her condition was disabling. He recommended a treatment plan that included stretching, exercise, and psychiatric treatment.

■ Paul Revere denied Dames's appeal. It said that, assuming she had fibromyalgia in addition to her psychiatric disorders, her disability had been "caused or contributed to by a psychiatric disorder." Thus, the policy's 24–month limit applied. The policy stated that Paul Revere had "full, final, conclusive, and binding authority to construe and interpret [the policy]... as may be necessary to make any and all decisions and determinations under such policies. A decision of the Claims Administrator shall not be overturned unless it is arbitrary and capricious or unless there is no rational basis for the decision." This language is identical to that used in *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161 (9th Cir.2001), where we approved the abuse of discretion standard in the administration of similar ERISA plans.

■ The district court correctly held that the policy conferred discretion on Paul Revere, and reviewed the decision to deny benefits for abuse of discretion. On cross motions for summary judgment, Dames submitted an affidavit from Dr. Paltrow, which stated that she suffered from "comorbidity." (Both the depression and the pain from the fibromyalgia). He explained that "[c]omorbidity is a concomitant but unrelated pathologic or disease process; usually used in epidemiology to indicate the coexistence of two or more disease processes." He stated that Dames's comorbidity involved PTSD (post traumatic stress disorder) and fibromyal-

---

4. "Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches." *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir.1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6–8 (1989)).

gia. But this report stated nothing about which malady caused her disability.

The court granted Paul Revere's motion for summary judgment and denied that of Dames. It held that Paul Revere had acted within its discretion, because evidence supported its conclusion that Dames's disability was caused or contributed to by a psychiatric disorder. The evidence did not support Dames's theory that her fibromyalgia was disabling.

In Dames's reply brief on appeal, and supplemental excerpts of record, she introduces a medical report by the Chairman of the Division of Arthritis and Rheumatic Diseases at Oregon Health Sciences University, Dr. Robert Bennett, which the district court had excluded as untimely. Paul Revere moved in this court to strike the report, because Dames did not appeal the district court's decision to exclude it. We grant the motion. As highly qualified as Dr. Bennett may be, his report was part neither of the administrative record in the Paul Revere review nor of the district court record, and accordingly is not before us. We note, however, that it would not have changed the result if it had been considered by the district court, because, again, it is another doctor's opinion that Dames was suffering from fibromyalgia, but it was silent on the cause of disability.

AFFIRMED.