102 P.3d 822 (2004)
In re the WELFARE OF ANGELO H.
No. 21714-1-III.
Court of Appeals of Washington, Division 3, Panel Two.
December 9, 2004.
*823 Janet G. Gemberling, Attorney at Law, Bonne W. Beavers, Attorney at Law, Spokane, WA, for Appellant.
Heidi S. Holland, Attorney at Law, Spokane, WA, for Respondent.
BROWN, J.
Angel H. appeals the trial court's termination of her parental rights to her son, Angelo. Ms. H. contends the trial court erred in determining the Department of Social and Health Services offered all services capable of correcting her parental deficiencies. Next, Ms. H. contends her due process rights were violated when the trial court appointed an expert to prove an element of the State's case. Further, she contends the trial court abused its discretion both when it denied her motion to disqualify a court-appointed expert and her continuance motion. We disagree with each contention, and affirm.

FACTS
This is the third parental termination appeal filed by Ms. H. regarding three different children. Ms. H.'s rights to her two older children were terminated in 1995 and 1997. The current action concerns Ms. H.'s third child, Angelo H.
Ms. H. suffers from a seizure disorder related to significant brain injury suffered as the result of childhood meningitis. Ms. H. has taken IQ tests, which indicate she has borderline intellectual functioning at best and mild mental retardation at worst. Ms. H. lives on her own, pays her own bills, and has a job, driver's license, a car, car insurance, and volunteers in the community.
Angelo was born December 6, 1999 and placed in foster care pursuant to an agreed shelter care order filed December 15, 1999. Angelo has lived with his foster-adopt family since May 8, 2000, when he was five months old. Angelo's father relinquished paternal rights in 2001. Angelo is a medically fragile child under the care of a pediatric neurologist and is developmentally delayed. The quality of Angelo's care is critical to his health. Angelo's physician has related his medical condition has improved while he has been in the foster-adopt home.
An agreed dependency order regarding Ms. H. was entered on September 15, 2000. Ms. H. was referred to the Family Support Program (FSP) at Spokane Mental Health, an agency designed to reunify parents and children. Ms. H. failed to complete the intake process and was dropped from the program. The Department of Social and Health Services (DSHS) re-referred Ms. H. to FSP, but the program had a large waiting list and was ultimately discontinued. DSHS later arranged *824 for, and Ms. H. received, parenting instruction in two separate programs at Ms. H.'s request, even though neither program had staff specially trained for parents with cognitive difficulties.
Throughout the three dependency/termination proceedings involving Ms. H., DSHS has offered her many opportunities to improve her parenting skills, but finding effective services for her has been difficult. Ms. H. has shown a distrust of the State and state services. She is unable to implement parenting information. She is unable to understand and respond to a child's needs. She has been involved in abusive relationships. She does not follow through with appointments. She makes poor judgments.[1] In the two prior proceedings, the courts found all necessary services, reasonably available, and capable of correcting Ms. H.'s parental deficiencies in the foreseeable future had been offered to her.
The State petitioned to terminate Ms. H.'s rights to Angelo in June 2001. Trial took place in March 2002. Several witnesses testified no other services existed in Spokane more tailored or more beneficial to Ms. H. than those already offered. After a two-week trial, the court delayed its decision to ask for an additional assessment from a disinterested third-party to assess Ms. H. and the parent-child relationship between Ms. H. and Angelo. Further, the court wanted a review of the evidence from the current and two prior dependency actions.
The court recommended the appointment of Dr. Stephen Becker, Ph.D. At a show cause hearing regarding his appointment on May 15, 2002, Dr. Becker related his qualifications and the specific tests he planned to utilize in evaluating Ms. H. and Angelo. Dr. Becker testified he has a Ph.D. in abnormal psychology and special education. He testified he has been in private practice since 1987. He has been doing parent evaluations since 1993. He related he has provided a variety of training for parents and professionals and teaches parenting classes for adults who are mildly retarded. The court found Dr. Becker qualified in the area of evaluation of cognitively disabled adults. The court noted Dr. Becker was neutral because he is not from Spokane. After cross-examination, Ms. H. did not object to his appointment.
Ms. H. later filed a dismissal motion, contending the State failed to meet its burden of proof because the court felt it was necessary to appoint an expert. The court denied the motion, and specifically noted the issue was not whether DSHS had met its burden, but assistance in interpreting the information presented:
If [the court] believed the State had not made a prima facia case, [it] would have dismissed the case at that time. The issue for [the court] is a more thorough review of the information and not whether the information isn't there or available.
Report of Proceedings at 1686.
Dr. Becker later testified regarding his report. Much of Dr. Becker's testimony corroborated prior witnesses and evidence. Ms. H. offered rebuttal testimony.
Ms. H. moved to continue the trial to gather evidence regarding the effect of newly available anti-seizure medicine on her ability to concentrate and parent Angelo. Prior to September 2002, Ms. H.'s seizure disorder was treated with depakote and phenobarbital. According to the testimony presented at trial, some of the adverse side effects associated with these medications include cognitive impairment, sedation, and drowsiness. Dr. Britt and Dr. Derby testified in support of her continuance request. But, Dr. Britt could not testify to his opinions within a reasonable medical certainty.[2] Ms. H.'s motion to continue the trial was denied.
In the end, the court concluded Ms. H. was not capable of parenting Angelo on a daily basis, despite almost three years of services. It found Ms. H. would not be able to respond to Angelo's needs as he developed and matured, nor would she be able to parent him in *825 an emergency or discipline situation. Findings of fact, conclusions of law, and an order of termination were filed on December 13, 2002. Ms. H. appealed.

ANALYSIS

A. Services Offered
The issue is whether the court erred in determining DSHS offered all services capable of correcting Ms. H.'s parental deficiencies pursuant to RCW 13.34.180(1)(d). Ms. H. specifically assigns error to relevant portions of findings of fact X, XVI, and XIX through XXII.[3]
We review an order terminating parental rights to determine whether substantial evidence supports the trial court's findings in light of the degree of proof required. In re Welfare of S.V.B., 75 Wash.App. 762, 768, 880 P.2d 80 (1994). A court may terminate all parental rights if it finds all statutorily-required allegations of the petition seeking termination are established by clear, cogent, and convincing evidence and termination is in the best interests of the child. RCW 13.34.180; RCW 13.34.190(1), (4). Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown to be "highly probable." In re Dependency of K.R., 128 Wash.2d 129, 141, 904 P.2d 1132 (1995). We defer to the trial court's fact finding function when assessing witness testimony and credibility, particularly in deprivation proceedings. In re Welfare of Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980).
RCW 13.34.136(1)(d) requires the court to find all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future to be expressly and understandably offered or provided by the State. DSHS has provided Ms. H. with several service referrals since the beginning of the dependency action. DSHS referred Ms. H. more than once to FSP, an agency specifically designed to reunite families. Ms. H. did not timely follow through with intake appointments and was dropped from the program. DSHS then referred Ms. H. to Early Head Start and The Martin Luther King Center for parenting classes at her request, but these programs were unable to remedy Ms. H.'s parental deficiencies. This failure is likely partly due to Ms. H.'s distrust of the State and State services, as well as her failure to follow through with appointments.
DSHS complied with RCW 13.24.180(1)(d) by referring Ms. H. to these service providers, even though Ms. H. ultimately failed to take advantage of or benefit from these referrals. See In re Welfare of H.S., 94 Wash. *826 App. 511, 521, 973 P.2d 474 (1999); see also In re Welfare of Ott, 37 Wash.App. 234, 238, 679 P.2d 372 (1984) (upholding the court's finding where DSHS made referrals but the parent failed to cooperate with service referrals). Several experts testified they were unaware of any program in Spokane capable of further assisting Ms. H. in obtaining the requisite parenting skills.
Ms. H. next contends the State failed to design and implement services specifically tailored to remedy her deficiencies as a cognitively disabled parent as required by the Americans with Disabilities Act (ADA). While the ADA requires public entities to make reasonable accommodation for disabled persons, it does not require DSHS to provide disabled parents with services not offered to other parents in dependency proceedings. See Welfare of H.S., 94 Wash.App. at 521-22, 973 P.2d 474. Therefore, we conclude the ADA was not violated.
Ms. H. next contends the court erred in considering services DSHS offered in her two prior termination proceedings. However, services offered in prior dependencies are properly considered as factual evidence in a current dependency. In re Dependency of P.D., 58 Wash.App. 18, 22, 792 P.2d 159 (1990). Here, the two prior termination proceedings resulted in findings that Ms. H. was provided all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future. The court did not err in relying on this evidence.
Finally, Ms. H. contends the court erred by failing to refer her to S.L. Start and the Division of Developmental Disabilities. However, DSHS had referred Ms. H. to S.L. Start in a prior proceeding without success. In any event, this court has previously rejected a similar argument that failure to refer to specific agencies was sufficient to preclude a finding the requisite services had been offered under RCW 13.34.180(1)(d). Welfare of H.S., 94 Wash.App. at 521-22, 973 P.2d 474.
In sum, substantial evidence supports the finding Ms. H. was offered services in compliance with RCW 13.34.180.

B. Due Process
The issue is whether the trial court erred in appointing an expert, Dr. Becker, to provide evidence under ER 706 in violation of due process principles by relieving DSHS of its burden of proof.
Both the consideration of additional evidence and appointments under ER 706 are reviewed for abuse of discretion. Students of Cal. Sch. for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir.1984); Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir.1999).[4] A trial court has "broad discretion in ruling on evidentiary matters and will not be overturned absent manifest abuse of discretion." Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 662-63, 935 P.2d 555 (1997). Before the State can terminate parental rights, due process requires the State to prove its allegations by clear, cogent and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
ER 706 authorizes a court to appoint an expert both to testify and advise the court on technical matters when the facts presented are not clear to the fact finder. Reilly v. United States, 863 F.2d 149, 156 (1st Cir.1988); Graves v. P.J. Taggares Co., 25 Wash.App. 118, 605 P.2d 348 (1980). Trial courts have wide discretion to order a psychological examination in dependency proceedings if the court finds it "necessary to the proper determination of the case." RCW 26.44.053(2); see also In the Interest of J.F., 109 Wash.App. 718, 728, 37 P.3d 1227 (2001) (trial courts have wide discretion in dependency and termination proceedings to receive and evaluate evidence in light of a child's best interest).
In Walker, the court determined the appointment of an expert by the trial court was appropriate to deal with conflicting expert testimony presented at trial. Walker, 180 *827 F.3d at 1071. The court emphasized the appointment was appropriate because the appointment was not due to insufficient or inconclusive evidence. Id.
Here, the court properly proceeded under ER 706 by holding a show cause hearing regarding Dr. Beckers appointment. Both parties knew of Dr. Beckers imminent appointment and examined him before his appointment. The court appointed Dr. Becker to give a neutral interpretation of the information already presented to the court, not because DSHS had failed to meet its burden of proof. Indeed, Dr. Becker's testimony largely corroborated the prior witnesses' evidence. The trial court acted within its discretion under ER 706 and RCW 26.44.053(2).
In sum, the court did not err in appointing Dr. Becker. Further, due process principles were not violated because both parties had notice of the appointment and an opportunity to be heard. Moreover, the appointment did not relieve DSHS of its burden of proof.

C. Expert Witness Qualifications
The issue is whether the court erred in qualifying Dr. Becker as an expert witness.
"Qualifications of expert witnesses are to be determined by the trial court within its sound discretion, and rulings on such matters will not be disturbed unless there is a manifest abuse of discretion." Oliver v. Pac. N.W. Bell Tel. Co., 106 Wash.2d 675, 683, 724 P.2d 1003 (1986). A court abuses its discretion when exercised on untenable grounds or for untenable reasons. State v. Thang, 145 Wash.2d 630, 642, 41 P.3d 1159 (2002).
A witness may be qualified as an expert through "knowledge, skill, experience, training, or education." ER 702. Dr. Becker has a Ph.D. in abnormal psychology and special education, has been doing parent evaluations since 1993, and has provided a variety of training for parents and professionals. He has taught parenting classes for adults who are mildly retarded for many years. The court appointed Dr. Becker to interpret and clarify the evidence presented at trial regarding Ms. H.'s cognitive impairment, and whether she was capable of learning to parent. Considering his background, the trial court had tenable grounds to conclude Dr. Becker was sufficiently qualified to do so.
Further, Ms. H.'s newly-framed objection is not timely. See RAP 2.5; State v. O'Neill, 91 Wash.App. 978, 993, 967 P.2d 985 (1998). In any event, we conclude the court did not abuse its discretion in deciding Dr. Becker was qualified to be an expert witness in this case.

D. Continuance Request
The issue is whether the court erred in denying Ms. H.'s motion to continue to obtain evaluations regarding the remedial potential of new anti-seizure medications on her parenting skills. The court's denial of Ms. H.'s motion to continue is also reviewed for abuse of discretion. See State v. Campbell, 103 Wash.2d 1, 14, 691 P.2d 929 (1984).
Six months after trial, Ms. H. moved for a continuance to evaluate the effectiveness of new prescriptions on her cognition. Prior to September 2002, Ms. H.'s seizure disorder was treated with depakote and phenobarbital. According to the testimony presented at trial, some of the adverse side effects associated with these medications include cognitive impairment, sedation, and drowsiness. However, the evidence at trial did not establish Ms. H. was actually suffering from these side effects. Further, although Ms. H. presented expert medical testimony in support of the continuance, Dr. Britt could not testify to his opinions within a reasonable medical certainty.
Considering the tentativeness of Ms. H.'s evidence, the court did not abuse its discretion in denying Ms. H.'s belated motion for a continuance. The child has a considerable interest in a speedy resolution to termination proceedings. See In re Dependency of T.R., 108 Wash.App. 149, 159, 29 P.3d 1275 (2001).
In sum, we conclude the trial court did not err in denying Ms. H.'s continuance request.
Affirmed.
I CONCUR: KATO, C.J.
*828 SCHULTHEIS, J. (dissenting).
Implicit in the trial court's order for a current psychological assessment was a determination that the Department of Social and Health Services lacked the ability to formulate a service plan capable of remedying Angel H.'s parental deficiencies. Instead of ordering the assessment to address this deficiency, the trial court should have granted Ms. H.'s motion to dismiss the termination. I therefore respectfully dissent.
Our task is to determine whether this record supports the court's finding that the Department complied with RCW 13.34.180(1)(d), which requires it to design and implement services that are specifically tailored to correct Ms. H.'s alleged parental deficiencies. Ms. H. argues the Department failed to abide by the statutory mandate. As evidence, she points to the fact that prior to ordering services aimed at correcting her alleged parental deficiencies, the Department failed to obtain a current psychological assessment in order to determine the exact nature of her cognitive disabilities so that an appropriate service plan could be designed for her.
This was a source of concern to the trial court as well, which took the initiative to order a psychological evaluation of Ms. H. once Dr. Stephen Becker was appointed as the court's expert pursuant to ER 706. In making this decision the court stated: "I need to have something that will really give everybody the opportunity to take a look at Ms. [H.'s] abilities and see whether or not she does have the ability to parent on her own and if that ability can be nurtured quickly."[1] This request for a basic evaluation was made because the court determined the information presented during the two-week trial was "stale" and "old."[2] What is even more disturbing is that due to Dr. Becker's lack of expertise in administering the exam, the psychological evaluation he performed could not be considered as part of his written evaluation of Ms. H. and Angelo. The court made its decision regarding the termination of Ms. H.'s maternal rights toward Angelo without ever considering the psychological exam it said was necessary to resolve the case.
It is hard to imagine how a Department-ordered service plan, designed and intended to remedy parental deficiencies in the near future, could be implemented when neither the Department nor the treatment providers were even aware of Ms. H.'s current parental deficiencies. For example, in its termination findings, the court determined Angel was offered parenting instruction. However, at trial, the parenting instructors testified that they were never informed of the exact nature of Angel's cognitive disabilities. The statute specifically states the Department must offer reasonably available services that are capable of correcting parental deficiencies. This standard is not met when the Department merely arranges and pays for services that have not been tailored toward correction of the individual deficiencies of the program participant.
On the record presented, the evidence does not support the trial court's finding that the Department complied with RCW 13.34.180(1)(d). Because the record does not support termination, I would reverse the trial court order.
NOTES
[1] These findings were made by the court and not challenged by Ms. H. They are verities on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992).
[2] Ms. H. does not assign error to this finding of fact, and it is a verity on appeal. See Cowiche Canyon Conservancy, 118 Wash.2d at 808, 828 P.2d 549.
[3] Finding of Fact X states in relevant part: "In July of 2000 [,] Ms. [H.] attended parenting classes with Ms. Lewis." Clerk's Papers (CP) at 1370.

Findings of Fact XVI states in relevant part: "The issue in this case is whether or not Ms. [H.] can parent Angelo  can supervise him in a normal home setting. All of the services that have been provided have tried to determine that. They have been offered to attempt to find out if Ms. [H.] can parent and then to observe her interactions with Angelo and whether or not she could parent on a 24 hour a day /7 day a week basis."
....
"Services court-ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting Ms. [H.]'s parental deficiencies within the foreseeable future have been offered or provided." CP at 1374-75.
Finding of Fact XIX states in relevant part: "There is little likelihood that conditions will be remedied so that Angelo can be returned to Ms. [H.] in the near future. Angelo is almost three years old and has never lived with his mother. That situation is problematic for two reasons. First, there is a rebuttal [sic] presumption that, if the conditions have not been remedied within twelve months following the dispositional order, ... they cannot be remedied. We are two years beyond entry of the dispositional order." CP at 1376.
....
Finding of Fact XX states in relevant part: "There is no evidence before the court to indicate Ms. [H.]'s impairments will change to any great degree. The situation for Ms. [H.] is a permanent situation." CP at 1377.
Finding of Fact XXI states in relevant part: "There was no evidence by testimony or in any of the exhibits that indicated anyone felt that Ms. [H.] could parent 24 hours a day/ 7 days a week." CP at 1378.
Finding of Fact XXII states in relevant part: "Dr. Becker's observations of the visitation are consistent with other testimony and the vast majority of Dr. Becker's findings in his report are things that other evaluators corroborate." CP at 1379.
[4] Because the state rule parallels the federal rule, it is appropriate to look to federal cases to provide guidance on this issue. See Beal v. City of Seattle, 134 Wash.2d 769, 777, 954 P.2d 237 (1998).
[1] Report of Proceedings at 1607.
[2] Id.