# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIERRO MUNIZ,
                   *Plaintiff-Appellant,*

v.

AMEC CONSTRUCTION MANAGEMENT,
INC., a Corporation,
                   *Defendant-Appellee.*

No. 09-55689

D.C. No.
2:07-cv-08066-
CAS-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
May 7, 2010—Pasadena, California

Filed October 27, 2010

Before: John T. Noonan, Richard R. Clifton and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton

17879

**COUNSEL**

Charles J. Fleishman (argued) and Paul A. Fleishman, Northridge, California, for the appellant.

Russell H. Birner (argued) and Adrienne C. Publicover, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Los Angeles, California, for the appellee.

**OPINION**

CLIFTON, Circuit Judge:

Dierro Muniz appeals the district court's decision upholding Connecticut General Life Insurance Company's ("CGLIC") termination of Muniz's disability benefits. The district court held that Muniz did not qualify for disability benefits under the terms of his disability insurance plan. We affirm.

## I. Background

Muniz was insured under a long-term disability insurance plan issued by CGLIC as a benefit of his employment with Morse Diesel International, predecessor of Amec Construction Management, Inc. This plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq*. Under the CGLIC plan, a claimant will continue to receive benefits after 24 months if he is "totally disabled," which is defined as "unable to perform all the essential duties of any occupation for which [he is] or may reasonably become qualified."

Muniz was diagnosed with HIV in 1989 and stopped working on August 1, 1991, due to the effects of his infection. He began receiving total disability benefits under the CGLIC plan in February 1992. In April 2005, Muniz's claim came up for periodic review.

As part of the review process, Muniz completed forms on which he indicated he had "debilitating fatigue," "asthma [that] compounds [him] from being ambulatory," difficulties with "concentration and attention span," and "intermittent malaise." Muniz also noted he engaged in light household activities and exercise. Muniz's treating physician, Dr. William Towner, completed a Physical Activities Assessment, on which he checked boxes indicating that he found Muniz could sit, stand, and walk "occasionally (1-33%) (< 2.5 hours)." Dr. Towner also indicated that Muniz's ability to work extended shifts or overtime fell into the same "occasionally" category.

Based on a review of these forms and Muniz's medical records, CGLIC determined in its vocational assessment that Muniz could perform "sedentary employment," which qualified him for clerical positions. A CGLIC nurse case manager also found that the "current medical [record] does not support the severity of symptoms as stated by [Muniz]."

The vocational assessment and the nurse case manager's evaluation were shared with Dr. Towner, and CGLIC requested that Dr. Towner provide further medical documentation should he disagree with the analysis. Dr. Towner informed CGLIC that he disagreed with its assessment and he noted the number of medications Muniz took daily, which left him "extremely fatigued and unable to concentrate," as well as Muniz's persistent contraction of methicillin-resistant staph aureus infections. Dr. Towner concluded it was his "professional medical opinion that Mr. Muniz will be unable to work in any field, sedentary or otherwise, in the foreseeable future." He did not provide any documentation of the fatigue or lack of concentration.

CGLIC requested medical records from Dr. Towner in support of his opinion, including testing of Muniz's cognitive status, and after the records were received, CGLIC found them incomplete and determined that Muniz should undergo a Functional Capacity Evaluation ("FCE").

CGLIC attempted to contact Muniz to schedule the FCE several times over the course of four months without success. On June 22, 2006, CGLIC sent Muniz a final letter informing him that it was suspending his benefits due to his failure to comply with the FCE request, and that his case would be closed effective July 21, 2006, should he not respond by that date.

On July 5, 2006, Muniz contacted CGLIC. He explained he did not receive any CGLIC communication because he did not use his home phone and he had been in Texas caring for his parents. Muniz requested that he be allowed to complete the FCE at a facility in Texas.

CGLIC located a facility in Texas and requested approval from Dr. Towner, for this facility required a statement of medical stability from the patient's doctor before conducting the FCE. Dr. Towner refused to authorize the exam, stating that Muniz "suffer[ed] from wasting, fatigue [and being] unable to participate in any functional evaluation."

CGLIC then requested Dr. Towner send updated medical records for Muniz. Based on the existing file material and the additional records sent by Dr. Towner, a nurse case manager again found that Muniz's file was "insufficient to provide a severity of symptoms that impact function." CGLIC closed Muniz's claim on August 16, 2006, with benefits paid until September 8, 2006. CGLIC informed Muniz that his "medical documentation [did] not contain any current findings or document the severity of [his] current condition that would prevent [him] from performing the essential duties of any occupation."

Muniz filed an administrative appeal. His file was re-evaluated by a new claim examiner and by the CGLIC medical director. The medical director noted a lack of evidence of testing of "functional deficits" that would prevent him from performing sedentary duties and concluded that the documentation did not support Muniz's claim.

Muniz again appealed the denial of benefits, alleging procedural errors on behalf of CGLIC and submitting further records from a February 2007 visit with Dr. Towner. A new claim examiner upheld the decision to terminate Muniz's claim. Muniz then filed this action in district court pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

The parties agreed that the district court was to review Muniz's claim under the de novo standard, because the CGLIC policy did not confer discretion upon CGLIC. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962-63 (9th Cir. 2006) (en banc). After conducting a de novo review, the district court found the administrative record was insufficient for it to determine whether Muniz was "totally disabled" under the terms of the plan at the time his benefits were terminated. The court asked counsel for their positions on "appointing . . . an independent expert to evaluate Muniz and present an opinion as to his functional capacity," and counsel for Muniz noted that the court had the authority to do so, providing the court with a supporting citation to *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065 (9th Cir. 1999). The district court subsequently ordered the parties to submit a joint list of proposed experts.

Muniz and Amec disagreed as to the intent of that order, Muniz understanding they were to identify HIV experts and Amec believing they were to identify functional capacity experts. The parties filed a joint request for clarification, and the court confirmed that the order required designation of a functional capacity evaluator. The parties agreed upon a facil-

ity to conduct the evaluation, and on March 25, 2009, Muniz was tested and evaluated by physical therapist Robert Larson.

Larson concluded that, on the day of the evaluation, "Muniz demonstrated the capability to perform at a sustained light to light-medium demand level." Larson also stated that for tasks such as sitting, standing, bending, and reaching, Muniz "performed at competitive levels when compared to individuals within the same population demographic." He characterized Muniz's activity tolerance and endurance as "fair to poor"; his body mechanics, pain behavior correlation, and upper/lower strength as "fair to good"; and his coordination and pace object control as "good."

After analyzing the record with the inclusion of the 2009 FCE, the district court concluded that it did not find Muniz "totally disabled" under the terms of the CGLIC plan as of September 9, 2006, the day after his benefits were terminated. This appeal followed.

## II.   Discussion

"Where, as here, a district court has conducted a *de novo* review of an ERISA plan administrator's decision, we review the court's factual findings only to determine whether they are 'clearly erroneous.' " *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732-33 (9th Cir. 2006) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1984, 1095 (9th Cir. 1999) (en banc)). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110-11 (9th Cir. 1999).

### A.   The Claimant's Burden of Proof

**[1]** Muniz brought suit under ERISA's civil-enforcement provision, which allows a claimant "to recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The district court assigned the burden of proof to Muniz as the claimant. Muniz contends that the burden should properly be borne by the plan administrator, but we agree with the district court. As concluded by other circuit courts which have addressed the question, when the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant. *See, e.g.*, *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) ("A plaintiff suing under [29 U.S.C. § 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits."); *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992) ("[W]e agree that it was [the claimant's] burden to show that he was entitled to the 'benefits . . . under the terms of his plan.' ") (omission in original) (quoting 29 U.S.C. § 1332(a)(1)(B)).[1]

**[2]** Muniz argues that after he met the initial burden of proof of disability by submitting evidence of Dr. Towner's assessment of his disability, the burden of proof should have shifted to CGLIC to demonstrate that its decision to terminate his benefits was justified. Muniz does not cite any precedent where a court conducting a de novo review of the record shifted the burden of proof to the claim administrator, but rather points to cases where courts reviewed claim administrator decisions under the abuse-of-discretion standard.

---

[1]District courts within this circuit have consistently held that the burden of proof remains with the claimant when the court reviews a plan administrator's decision under the de novo standard of review. *See, e.g.*, *Schwartz v. Metro. Life Ins. Co.*, 463 F. Supp. 2d 971, 982 (D. Ariz. 2006) ("Plaintiff has the burden of proof to show that he was eligible for continued long term disability benefits based on the terms and conditions of the ERISA plan."); *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1232 (N.D. Cal. 2003) ("The Court concludes that Plaintiff must carry the burden to prove that she was disabled under the meaning of the plan."); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F. Supp. 2d 1145, 1155 (C.D. Cal. 1999) ("[T]he burden in making such a claim [for entitlement to benefits] is on Plaintiff.").

**[3]** The abuse-of-discretion standard is used to review a benefits decision when, as is often the situation but is not in this case, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). There is an additional issue to consider in such a case, however. If the plan administrator or decisionmaker is also the party from whose pocket the claim would have to be paid, such as an insurer or an employer sponsoring a self-funded plan, the court must determine whether the denial of benefits was improperly affected by this conflict of interest. The burden of proving that its decision was not improperly influenced has, logically, been placed on that administrator. *See, e.g.*, *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999) (when a claimant produces evidence that a plan administrator's self-interest caused a breach of the administrator's fiduciary obligations to the claimant, a rebuttable presumption arises in favor of the claimant and the plan bears the burden of proving that a conflict of interest did not affect its decision to deny or terminate benefits).[2]

**[4]** We clearly limited this burden-shifting approach to abuse-of-discretion cases where the administrator's potential conflict of interest was in question, however. *See, e.g.*, *Lang*

---

[2]The Supreme Court recently addressed the abuse-of-discretion standard as used to review to an ERISA benefits decision made by a claim administrator who also funds the benefits plan. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008). It stated that a court must consider this conflict of interest as one of numerous "case-specific" factors it evaluates in determining whether the plan administrator abused its discretion in denying benefits, with the weight given to the conflict of interest varying on the individual circumstances of each case. *Id.* at 2351-52; *see also Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 631 (9th Cir. 2009) ("Our court has implemented this approach [from *Metro. Life Ins. Co.*] by including the existence of a conflict as a factor to be weighed, adjusting the weight given that factor based on the degree to which the conflict appears improperly to have influenced a plan administrator's decision.").

*v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 798 (1997) (under the abuse of discretion standard, "[i]f the plan fails to carry its burden, however, our review becomes de novo" and the plan's interpretation is no longer relevant because the court in conducting a de novo review of the record does not give "deference to the administrator's tainted exercise of discretion") (internal quotation marks omitted). When conducting a de novo review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan.

Muniz also contends that the burden of proving a disability should be shifted to the claim administrator when the claim administrator terminates disability benefits without providing any evidence that the claimant's condition has improved or changed since its initial award of benefits. There is no case law supporting this proposition.[3] Rather, district courts within

---

[3]Muniz cites five cases for the proposition that the defendant must justify termination of benefits with new evidence demonstrating a change in the claimant's condition. None of these cases support application of this burden-shifting standard, however. In both *McOsker v. Paul Revere Life Insurance Co.*, 279 F.3d 586 (8th Cir. 2002), and *Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496 (8th Cir. 1989), the Eighth Circuit acknowledged that a previous payment of benefits is relevant when evaluating whether a claim administrator properly terminated benefits, but the court did not shift the burden of proof to the defendant in either case. In *Connors v. Connecticut General Life Insurance Co.*, 272 F.3d 127 (2d Cir. 2001), the Second Circuit also did not shift the burden of proof to the defendant; it simply noted that the district court's finding that the plaintiff's claim was over an initial denial of benefits rather than a termination of past benefits was a factual error that may have influenced the weight given to the evidence presented by the defendant.

Muniz also cites *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008), for the proposition that the burden shifts to the defendant to prove a change in a claimant's medical condition when terminating benefits. The court in *Saffon* did not shift the burden to

this circuit have consistently held that the burden of proof continues to lie with the plaintiff when disability benefits are terminated after an initial grant. *See, e.g.*, *Clifford v. Prudential Ins. Co. of Am.*, No. 07-CV-126-ST, 2008 WL 4164750, at *5, *9 (D. Or. Aug. 27, 2008) (the plaintiff had the burden of proving she was disabled under the plan's terms when the plan terminated her benefits after a reevaluation of her claim); *Gardner v. Bear Creek Corp.*, No. C 06-02822 MHP, 2007 WL 2318969, at *13, *18 (N.D. Cal. Aug. 6, 2007) (same). We agree. That benefits had previously been awarded and paid may be evidence relevant to the issue of whether the claimant was disabled and entitled to benefits at a later date, but that fact should not itself shift the burden of proof.

## B.   The District Court's Decision

The district court's finding that Muniz did not meet the CGLIC plan's definition of "totally disabled" as of September 9, 2006 was not clearly erroneous. In conducting a de novo review of the record, the district court found that the evidence presented, including the opinions of two health care professionals who personally examined Muniz, did not confirm Muniz's claims that his symptoms rose to the level of total disability and left him "unable to perform all the essential duties of any occupation for which [he is] or may reasonably become qualified."

**[5]** Muniz argues that the district court committed clear error in its analysis because his medical records did not show

---

the defendant, but rather held under the abuse-of-discretion standard that the defendant must conduct a "meaningful dialogue" with the beneficiary regarding his or her claim before a final denial of the claim. *Id.* at 870-71. Similarly, in *Beckstrand v. Electronic Arts Group Long Term Disability Insurance Plan*, No. 1:05-CV-0323, 2008 WL 4279566 (E.D. Cal. Sept. 16, 2008), another abuse of discretion case cited by Muniz, the court calls for a "meaningful dialogue" between claimant and claim administrator, but does not mention burden-shifting.

a change in his condition over the years he was covered by the CGLIC plan. As noted above, the fact that the claimant was initially found disabled under the terms of the plan may be considered evidence of the claimant's disability, but as the Eighth Circuit stated in *McOsker v. Paul Revere Life Insurance Co.*, "[w]e are not suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind." 279 F.3d 586, 589 (8th Cir. 2002). Muniz did not provide sufficient evidence to demonstrate that the district court committed clear error in its analysis of the record.

**[6]** Muniz contends that Dr. Towner's recommendations and observations demonstrated that Muniz met the definition of "totally disabled" under the CGLIC plan. He argues that the district court improperly rejected Dr. Towner's medical opinion, for as his treating physician, Dr. Towner's opinion should have been accorded greater deference by the court. But courts are not required to "accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Moreover, Muniz does not provide significant factual support to rebut the district court's finding that Dr. Towner's records were inconsistent, incomplete, and did not ultimately support Muniz's claim that he met the definition of total disability under the CGLIC plan.

**[7]** Muniz also argues that the district court erred by ordering him to participate in an FCE in March 2009 and in subsequently considering the results of the March 2009 examination as relevant to his condition when his benefits were terminated in September 2006. This argument fails because "[a] district court, when exercising *de novo* review of an ERISA benefits denial decision, may admit additional evidence when 'circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Friedrich*, 181 F.3d at 1111 (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)). Such evidence may

include the opinion of an independent expert. *See Walker*, 180 F.3d at 1071 ("Armed with the authority to consider additional evidence in its de novo review, the district court also has the discretion to appoint an expert *sua sponte* under Federal Rule of Evidence 706(a)."). Here, the district court conducted a review of the record and determined it could not rely solely on Dr. Towner's records due to their inconsistent and incomplete nature. The court did not abuse its discretion in holding that an expert opinion would be helpful to determine the extent of Muniz's disability.

Muniz argues that the requirement in section 1133(1) of ERISA that a claimant who is denied benefits be "provide[d] adequate notice in writing . . . setting forth the specific reasons for such denial" from his benefit plan indicates that the evidence the district court may consider is limited to the written reasons the plan gave the claimant for denying benefits. 29 U.S.C. § 1133(1). The case law cited by Muniz does not support this proposition. The only case he refers to involving de novo review actually provides support for the contrary proposition that additional evidence should be admitted under the circumstances faced by the court here. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (introduction of evidence beyond the administrative record may be necessary for "claims that require consideration of complex medical questions or issues regarding the credibility of medical experts") (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc)).

**[8]** Muniz also argues that he was denied a "full and fair review" of his claim because he was not given the opportunity to present evidence that FCEs are flawed and that his March 2009 FCE was flawed in particular. *See* 29 U.S.C. § 1133(2) (the benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim"). The district court noted in its

denial of Muniz's motion for a new trial that it had "asked both parties' counsel about the appropriateness of a court-ordered FCE at trial, and plaintiff's counsel indicated such an order would be appropriate." While Muniz did state, in the parties' joint request for clarification of the court's order appointing an independent expert, that he would like to "submit evidence regarding the efficacy of such testing with regard to disability claims," he did not make any further attempts to challenge the FCE once the district court clarified that its order called for an FCE. Indeed, the parties agreed upon an FCE facility and expert to perform the exam. After the district court issued its judgment, Muniz filed a motion for a new trial or to amend the judgment, arguing that the FCE should not have been ordered, and the district court denied the motion, finding that Muniz had adequate opportunity to object to the FCE and did not do so. We agree with the district court that Muniz had a sufficient opportunity to challenge the FCE.

**[9]** Finally, Muniz argues that the results of the March 2009 FCE are irrelevant as to the issue of whether or not he was disabled on September 9, 2006. The district court itself noted that the "2009 evaluation does not, in and of itself, establish what Muniz's ability was in 2006." Nonetheless, while not conclusive, the 2009 FCE potentially provided insight as to Muniz's previous condition, for Muniz had many of the same symptoms and same activity levels as he did in 2006, and Muniz does not contend that his underlying condition changed substantially. The district court was cognizant that the FCE was "a snap shot performance of [Muniz's] capacity," and accordingly did not rely solely on the FCE's results, but rather considered them in combination with the other evidence. Muniz did not establish that the district court erred in reaching the conclusion that he was not "totally disabled" under the CGLIC plan.[4]

---

[4]Muniz also argues that he was denied a "full and fair review" of CGLIC's decision to deny benefits, as mandated by ERISA. 29 U.S.C.

## III.  Conclusion

Muniz did not meet his burden of proving he was "totally disabled" under the terms of the CGLIC plan as of September 9, 2006. The district court did not err in upholding CGLIC's termination of Muniz's disability benefits based on a lack of medical documentation supporting the determination of total disability.

**AFFIRMED.**

---

§ 1133(2). The district court conducted a de novo review of the record and thus did not accord any deference to CGLIC's decision. The adequacy of CGLIC's review is therefore not before this court. *See Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 798 (9th Cir. 1997) (de novo review does not address a plan administrator's "tainted exercise of discretion").