**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 22 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MELCHOR INCIONG,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>FORT DEARBORN LIFE INSURANCE COMPANY and REDKEN LABORATORIES, INC. LONG TERM DISABILITY PLAN,<br><br>Defendants - Appellees. | No. 12-15997<br><br>D.C. No. 4:10-cv-03384-SBA<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted April 9, 2014
San Francisco, California

Before: TALLMAN and CLIFTON, Circuit Judges, and DUFFY, District Judge.[**]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

Plaintiff-Appellant Melchor Inciong appeals the termination of his long-term disability benefits under an employee welfare benefit plan insured through Fort Dearborn Life Insurance Company ("Fort Dearborn"). Inciong brought suit under the private right of action provision in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Reviewing *de novo*, the district court found in favor of Fort Dearborn, noting that Inciong had failed to provide sufficient objective and quantifiable evidence to support his claim of total disability. We affirm.

"Where, as here, a district court has conducted a *de novo* review of an ERISA plan administrator's decision, we review the court's factual findings only to determine whether they are 'clearly erroneous.'" *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) (internal quotation and citations omitted).

To qualify for benefits under the policy, Inciong was required to show by a preponderance of the evidence that he was "unable to perform with reasonable continuity all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity." *See Muniz*, 623 F.3d at 1294 (claimant bears the burden of proof). This "any occupation" standard is "not

2

demanding." *Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1219 (9th Cir. 2008) (quoting *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1317 (9th Cir. 1994), *overruled on other grounds by Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008)). Inciong is not disabled under the policy if he can perform any job for which he is qualified. *Id.* The jobs for which he was held to be qualified were positions classified as either "sedentary" or requiring "light" physical strength. Therefore, Inciong was required to prove that he was unable to handle that level of physical activity. The district court found that the medical records did not support his claim, and the court's factual findings were not clearly erroneous.

Inciong argues that the district court erred in its analysis because his medical records did not show a change in his condition. Fort Dearborn presented evidence that Inciong's condition had in fact improved, and the district court found that his "level of activity has actually improved over time." Our review of the evidence in the record does not lead us to conclude that this factual finding was clearly erroneous. Moreover, it remained Inciong's responsibility to show by a preponderance of the evidence that he was "totally disabled" as defined in the policy when the benefits were terminated. A lack of change in Inciong's condition,

3

as reported by his treating physician, was relevant to the inquiry but not conclusive. *Muniz*, 623 F.3d at 1296.

Inciong further argues that vocational evidence supported his claim for disability because a labor consultant opined that Inciong was unlikely to be hired due to his long absence from the workforce. The policy's definition of disability does not require a showing that Inciong would in fact be hired for a specific job; it only requires a showing that jobs exist that Inciong was qualified for and capable of doing. *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1317-18 (9th Cir. 1994). The vocational survey identified such positions in the local job market.

Inciong contends that Fort Dearborn and the district court "unreasonably preferred" the opinions of its medical consultants over that of Inciong's treating physician. However, "[n]othing in [ERISA] suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).

Inciong further argues that Fort Dearborn should have conducted an independent in-person medical examination or a functional capacity evaluation. He relies on *Montour v. Hartford Life & Accident Insurance Co.*, 588 F.3d 623,

4

634 (9th Cir. 2009), for the proposition that a "pure-paper" review "raise[s] questions about the thoroughness and accuracy of the benefits determination." *Montour* is not applicable to this case. In *Montour*, the court addressed "the question of how a district court should apply the abuse of discretion standard when reviewing a decision by the administrator of an employee benefits plan . . . when that administrator has a conflict of interest [as the financial underwriter]." 588 F.3d at 626. Here, the district court reviewed Fort Dearborn's decision *de novo*; it did not review Fort Dearborn's exercise of discretion and decision-making process. Had the district court found such an examination or evaluation necessary to a *de novo* review, it could have ordered one. *See, e.g.*, *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1293 (9th Cir. 2010).

Finally, Inciong argues that Fort Dearborn's failure to explain a contrary Social Security Administration decision weighs against the propriety of its decision to terminate benefits. *See Montour*, 588 F.3d at 635. Inciong did not make this argument to the district court. Regardless, the argument fails. In *Montour*, the benefits administrator denied benefits at about the same time the Administration granted them. Here, by contrast, Fort Dearborn terminated benefits fifteen years after initially granting them, based on evidence that Inciong's condition had improved. There is no evidence that the Social Security Administration has

5

conducted a recent review of its determination. Furthermore, if the Administration did review its determination, the burden of proof would have rested on it to prove that Inciong was no longer disabled. *See* 42 U.S.C. § 423(f). Under this policy from Fort Dearborn, Inciong bore the burden of proving that he remained entitled to benefits, so the fact that he continued to receive Social Security disability benefits after July 2009 is less probative than Inciong contends.

**AFFIRMED**.