*1062 OPINION
OWENS, Circuit Judge:
Bruce Barton appeals from the district court’s judgment concluding that the ADT Security Services Pension Plan Administrator did not abuse its discretion in denying Barton’s request for pension benefits. Because the district court did not have the benefit of our analysis regarding the burden of proof in a case such as this, we reverse and remand for proceedings consistent with this opinion.
I. BACKGROUND
A. Barton’s Employment History
The parties dispute Bruce Barton’s employment history with the American District Telegraph Company (ADT) and/or its affiliates (ADT-related entities). Barton asserts that he worked for ADT from November 1967 until he resigned in September 1986. The parties agree that he also worked for a moving company for a short period in 1968 and served in the Marine Reserves from 1965-1971.[1]
The three named defendants in this case — ADT Security Services Pension Plan (pension plan), Tyco International Management Company (plan sponsor), and Tyco International Management Company, LLC Administrative Committee (plan administrator) — maintain that they have access to the pension records passed on by ADT, Inc., which Tyco acquired in 1997.
B. Relevant Pension Plans
Because Barton’s employment spanned eighteen years, two different plans govern his eligibility for a pension benefit: the plan in effect January 1, 1968 (1968 Plan) and the plan in effect January 1, 1985 (1985 Plan). Under the terms of the 1985 Plan, the 1968 Plan governs Barton’s service through December 31, 1975, and the 1985 Plan governs his service as of January 1, 1976. Barton maintains that his right to a pension vested because, although he stopped working before normal retirement age, he completed at least ten years of “continuous service” with the company.
The 1985 Plan defines “Company” as “American District Telegraph Company and such of its Affiliated Companies as have adopted the Plan and have been admitted to participation therein by the Board or any one or more of them, and any corporation succeeding to the rights and assuming the obligations of any such company.” An “Affiliated Company” is “a company which is a member of a controlled group of corporations of which the American District Telegraph Company is also a member.” The 1968 Plan defines “Company” as the “American District Telegraph Company and those controlled companies authorized by the Board of Directors to participate in the Plan.”
The 1985 Plan defines “Continuous Service” as follows. For employment through December 31, 1975, “Continuous Service shall be that service determined under the terms of the Plan as it was constituted on December 31, 1975.” After January 1, 1976, “[o]ne year of Continuous Service shall be recorded for any Plan Year during which an Employee has 1,000 or more Hours of Service.” A plan year in which an employee works 500 hours or less is considered a “break in service.” Addition *1063 ally, to the extent required by ERISA or. determined by the Board of Directors, if an employee transfers to a participating company from an affiliated company after January 1, 1976, he will receive credit for his continuous service to that affiliate prior to 1976, even if the affiliate had not adopted the Plan.
The 1968 Plan does not define “continuous employment,” save for the following provision regarding absence .without pay:
Any absence from the service, without pay -...; shall be considered as a break in the continuity of service, and persons re-employed, after such a break shall be considered as new employees and the term of employment reckoned from the date of such re-employment;, except that any such person reemployed, for. at least ten continuous years after such a break shall have his term of employment reckoned from the date of his initial employment less the entire period of such break. .
C. Barton’s Request for Pension Benefits
In 2010, Barton reached age sixty-five and contacted the pension record keeper about benefits. A December 13, 2010 letter from a pension .benefit administrator in response stated that the administrator “could not find any information on [Barton’s] employment with ADT Security Services, Inc.,” and enclosed instructions for navigating the pension claim procedure. Barton then provided documentation regarding his employment with ADT-related entities. In a June 24, 2011 letter, the pension record keeper said the documents Barton had sent failed to establish that he had a vested pension, and that if Barton had additional documentation — for example, a letter of vested benefits — he could file a claim with the Employee Benefits Committee. In response to a telephone inquiry, Barton was again informed that he was ineligible for a pension benefit.
Barton filed á claim with the Committee oh October 3, 2011. He stated that two former colleagues from the ADT office in Portland, Maine had provided similar documentation and received‘ADT pensions. He included copies of correspondence from the pension record keeper and the following documents:
• November 11, 1977 letter from R.B. Carey, Jr., President of ADT, on ADT letterhead listing an address of One World Trade Center, Suite 9200, NY, NY, addressed to “Mr. B.N, Barton, American District Telegraph Company” at the same World Trade Center address and suite. The letter congratulates Barton on his completion, on November 13, 1977, of ten years of service as a “member of the ADT organization.”
• Copies of key cards and identification/business cards issued by “ADT,”
• W-2 statements from 1980-1983 and • 1986, listing employer as “American District Telegraph Co.” at 1 World -' Trade Center, NY, N.Y. and showing an X marking the “Pension Plan” box.
• Pay stubs from 1981 and 1985 listing “American District Telegraph” at the bottom.
• Personnel Data Maintenance forms from 1984, 1985, and 1986 listing Barton’s current annual salary, raise, and new annual salary.
• Social Security Administration documentation summarizing Federal Insur- ■ anee Contributions Act (FICA) withholding from 1968-1980.[2]
*1064 D. Committee’s Denial of Barton’s < Claim
The Committee denied Barton’s claim on January 10, 2012. It reported that it had reviewed the documents listed above as well as the, following documents that Barton had provided earlier:
• Barton’s September 11, 1986 resignation letter on ADT letterhead.
• September 12, 1986 Memorandum on ADT letterhead confirming receipt of a credit card, tools, and company truck.
• Barton’s September 12, 1986 Exit Interview Questionnaire that listed a November 10, 1967 date of employment.
• Handwritten telephone conversation record describing Barton’s July 6,2011 call to the pension record keeper.
The Committee detailed the relevant plan provisions and wrote:
[Tjhere are no Plan records indicating your eligibility for participation in the Plan, your actual participation in the Plan, or your eligibility for benefits under the Plan. In addition, it was unclear from the information you provided whether you had a continuous term of employment or earned the required service to earn at least 10 Years of Continuous Service so as to be vested in a Plan benefit.
The Committee further explained that it was “not clear based on the information” that Barton provided that he met the terms of continuous employment. In particular, the Committee noted 'that the FICA records and W-2s did not cover each year of claimed employment, and that some documents lacked identifying information. ■ Such information “did not override or contradict the Plan records.” The letter detailed the appeals procedure and suggested Barton could “supply copies of any further evidence ... that would indicate that [he is] entitled to a Plan benefit, such as certified Social Security records for the entire period of time from 1967 through 1986 or a pension benefit statement or written evidence that [he was] eligible to receive a Plan benefit.”
On January 19, 2012, Barton responded and requested’ copies of “all plan documents, records and other information affecting the claim per your document concerning Applying for Benefits and Claim and Appeal Procedures.” • He specifically requested a Tyco International Summary Plan Description booklet, the Committee’s copy of the Social Security records, an example of a pension benefit statement and written evidence statement, and “application forms that should have been provided by the service.center.” The Committee responded by letter and enclosed a memorandum prepared by outside counsel summarizing key provisions of the 1968 and 1985 Plans,-and the full text of the Plans. Nothing in the record indicates that the Committee included the full 1983 Summary Plan Description (SPD) (referenced in the memorandum drafted by outside counsel) or exemplars of a pension benefit statement or “written evidence statement” as Barton requested.
E. Barton’s Appeal of the Committee’s Denial
Barton appealed the Committee’s denial on April 29,2012. He presented additional FICA records, broken down quarterly from 1967-1977 when he was an hourly employee and annually from 1978-1986 when he was a salaried employee.
The Committee denied Barton’s appeal on June 29, 2,012. ■ The Committee again noted there was no official record of Bar-top’s participation in the Plan and that the documentation he submitted “was insufficient to override the Plan records.” As with the initial denial, the appeal notice stated that “[i]t is not clear based on *1065 the information you provided that you were continuously employed with American District Telegraph Company.” The Committee also noted that the FICA records revealed that Barton had worked for companies in addition to ADT, which “could indicate that [he] did not have á continuous term of employment.” (emphasis added). In other words, because Barton could not document that he worked 1000 hours or more for each of the nearly twenty years he was employéd by ADT and its affiliates,- or that his employers participated in the Plans, he could not prove he was entitled to a pension;
F, Procedural History
On August 13, 2012, Barton filed suit in the Central District of California pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. He sought (1) declaratoiy relief that he was entitled to a pension; (2) pension benefits based on his employment with ADT; and (3) recovery of statutory penalties under 29 U.S.C. § 1132(c)(1) based on the pension administrator’s failure to comply with ERISA’s disclosure obligations.
After a bench trial, the district court issued its Findings of Fact and Conclusions of Law on July 19,2013. It held that the applicable standard of review was abuse of discretion and that the Committee did not abuse its discretion in denying Barton pension benefits. It declined to award Barton statutory penalties, holding that he lacked standing to assert a violation of ERISA’s disclosure requirements .because he did not have a colorable claim to pension benefits. Barton timely appealed.
II. ANALYSIS
A. Standard of Review
 “We review de novo a district court’s choice and application of the standard of review to decisions by fiduciaries in ERISA cases. We review for clear error the underlying findings of fact.” Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962 (9th Cir.2006) (en banc) (citation omitted). We also review de novo a district court’s allocation of the burden of proof. See Molski v. Foley Estates Vineyard & Winery, LLC, 531 F.3d 1043, 1046 (9th Cir.2008) (citing Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co., 940 F.2d 550, 555 (9th Cir.1991)).
B. Burden of Proof
The district court faithfully applied our precedent in reviewing the Committee’s denial of benefits for abuse of discretion. See Abatie, 458 F.3d at 963 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). But because the district court incorrectly placed the burden of proof on Barton for matters within defendants’ control, we remand to the district court in light of this opinion. We express no view on Barton’s eligibility for pension benefits.[3]
A claimant may bear the burden of proving entitlement to ERISA benefits. See, e.g., Muniz v. Amec Constr. Mgmt., *1066 Inc., 623 F.3d 1290, 1294-95 (9th Cir.2010) (holding that where a court reviews a plan administrator’s decision de novo, the claimant has the burden of proof). This rule makes sense in cases where the claimant has better — or at least equal — access to the evidence needed to prove entitlement. For example, where an employee must establish an illness to qualify for disability benefits, the burden lies most sensibly with the claimant, who can provide test results, physician reports, and other evidence about her condition. See, e.g., id. at 1298 (holding that the claimant failed to establish he was “totally disabled” within the meaning of a long-term disability insurance plan). But in other contexts, the defending entity solely controls the information that determines entitlement, leaving the claimant with no meaningful way to meet his burden of proof. This is one of those cases.
The district court placed the burden of proof on Barton to establish that his various ADT-related employers participated in defendants’ Plan, and that he worked the requisite hours per year. There are two problems with this approach. First, defendants are in a far better position to ascertain whether an entity was a participating employer. After all, they determine which employers participate in the plan. Indeed, both Plans state that affiliates or controlled companies may only participate if the company’s Board of Directors authorizes them to do so. Yet defendants asserted in the district court that they “have no records indicating whether the entities [identified as Barton’s employers in the Social Security records] were Participating Subsidiaries in the Plan at any time.” If Barton has made a prima facie case that he is eligible for a pension, his claim does not fail simply because he cannot initially prove whether defendants’ Board of Directors authorized his employers to participate in the Plans. Defendants never explain how the long-retired Barton could possibly answer this question if even they have no relevant records, particularly when, during his many years of employment, the corporate sub-entities were not evident from the company materials provided to Barton.[4] It is illogical and unfair for us to require Barton to close this gap, and the dissent points to nothing in ERISA that supports such a Kafkaesque regime where corporate restructuring can license a plan administrator to throw up his hands and say “not my problem.”
It should not greatly burden an ERISA-compliant entity to determine what companies were authorized as “participating employers,” so the entity, not the claimant, should bear the risk of insufficient records. See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (“When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer’s records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises.”). As we explained in Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.:
The records that employers are required to keep by the FLSA [Fair Labor Standards Act] and by ERISA may be the only evidence available to employees to prove that their employers have failed to *1067 compensate them in accordance with the statute. An employer cannot escape liability for his failure to pay his employees the wages and benefits due to- them under the law by hiding behind his failure to keep records as statutorily required.
839 F.2d 1333, 1338 (9th Cir.1988).
This shift also follows naturally from ERISA’s disclosure requirements. Section 502(c)(1) provides for the imposition of penalties on a plan administrator who has not complied with disclosure requirements. 29 U.S.C. § 1132(c)(1). One such requirement, section 104(b)(4), mandates supplying participants with certain plan information, such as the summary plan description, annual report, or “other instruments under which the plan is, established or operated.” 29 U.S.C. § 1024(b)(4). These disclosure requirements and the corresponding penalties function to ensure that an individual is duly informed of basic information relating to his pension plan:
As the legislative history bears out, the documents contemplated by § 104(b)(4) are those that allow “the individual participant [to] know, [ ] exactly where he stands with respect to the plan — -what benefits -he may be entitled to, what circumstances may preclude him .from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted;”.
Hughes Salaried Retirees Action Comm, v. Adm’r of Hughes Non-Bargaining Ret. Plan, 72 F.3d 686, 690 (9th Cir.1995) (en banc) (quoting S.Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863).[5]
It follows that if Barton has made a prima facie case that he is entitled to pension benefits, it is properly defendants’ burden to clarify what entities are covered under the Plans in the first instance. Employers, plans, and plan administrators must know the terms and conditions of the benefits they offer and be able to identify covered employers and participating employees.[6] Cf. Cent. States, *1068 Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 572, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (“[ERISA’s] reporting and disclosure standards require benefit plans to furnish all participants ■with various documents informing them of their rights and obligations under the plan ... a task that would certainly include the duty of determining who is in fact a plan participant.” (citation omitted)).
• Additionally, the district court faulted Barton for not proving that he worked over 1000 hours a year for the twenty years he was employed by ADT or its affiliates. But requiring Barton to prove his hours over the course of two decades is unreasonable and inconsistent with the goals of ERISA. That is especially so where, as here, nothing indicates that Barton was warned at the start of his career that he needed to retain a log of his hours to obtain pension benefits a generation or two later. We have previously shifted the burden of proving the number of hours an employee works where the calculation of damages is uncertain due to defendants’ failure to keep statutorily required records. Brick Masons, 839. F.2d at 1337-39.
We find the reasoning bf Brick Masons persuasive in this context. Brick Masons involved two wholly owned subsidiaries of one parent company. Id. at 1335. One, Industrial, had a collective bargaining agreement requiring it to contribute to the union’s fringe benefit trust funds (Trust) based on hours that union. employees worked. Id. The other, Harris, was nonunion. Id. The Trust sued to recover contributions for hours that Harris masons had worked on Industrial jobs. Id. It was undisputed that non-union masons had performed work for Industrial, but the Trust could not prove the exact' number of hours because Industrial had failed to maintain certain records required under ERISA. Id. at 1337-38. This court held that “Once the Trust Funds proved the fact of damage and Industrial’s failure to keep adequate records, the burden shifted to Industrial to come forward with evidence of the extent' of covered work performed by the 35 Harris employees.” Id, at 1338— 39. Industrial could not do so, and consequently was required to pay contributions for all hours ■ that non-union masons worked during the time period where they were shown to have performed some covered work. Id. at 1339.,
The'Brick Masons court'also found support in Anderson v. Mt. Clemens Pottery Co. There, the Supreme Court held that where an employér fails to keep adequate records of hours worked as required by FLSA, the employee carries his burden of establishing damages “if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.” 328 U.S. at 687, 66 S.Ct. 1187. The Court reasoned thaf, where it was the employer’s duty to keep the relevant records, the employer could not complain that the related damages were inexact. Id. at 688, 66 S.Ct. 1187.
Accordingly, we hold that where a claimant has made a prima facie case that he is entitled to a pension benefit but lacks access to the key information about corporate structure or hours worked needed to substantiate his claim and the defendant controls such information, the burden shifts to the defendant to produce this information.[7] Assuming that Barton can *1069 establish a prima facie case on remand, defendants mil then bear the burden of production as to whether he worked sufficient hours for a participating employer to collect a pension.
We recognize that fiduciaries of a defined benefit pension plan have a duty to protect the pooled funds and distribute benefits only to those who qualify. See, e.g., Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir.2005) (“An ERISA fiduciary is ‘obligated.to guard the-assets of the [Plan] from improper. claims, -as well as to pay legitimate claims.’ ” (alteration in original) (quoting Brogan v. Holland, 105 F.3d 158, 164 (4th Cir.1997))). We do not suggest that anyone can force a company to produce this .corporate information by merely asserting that he is owed a pension-r-a plaintiff must put forth objective proof. See, e.g., Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir.2015) (“[A] self-serving declaration does not always create a genuine issue of fact for summary judgement: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.”).
Where a claimant, through documentafy or other objective evidence, has made a prima facie case that he is entitled to a pension but has no means except for information in the defendant’s control to establish that his work was for a “covered employer” and of sufficient duration, the burden then shifts to the defendant to produce such information. A plaintiff claiming pension benefits will often have access to at least some objective documentation of prior employment — such as Social Security records, W-2 statements, income tax returns, and pay stubs — to make his prima facie case. Cf. Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc., 259 F.3d 1063, 1066-67 (9th Cir.2001) (holding that the burden does not shift under Brick Masons where the plaintiff did not produce sufficient evidence to meet the required threshold showing). • ■
We leave it to the district court to determine in the first instance whether Barton has established a prima facie case. In doing so, it can consider the evidence available at trial, such as Barton’s Social Security records, W-2 statements, pay stubs with, the pension box marked, and letter thanking him for ten years of service.
C. Statutory Penalties
The district court correctly held that to recover statutory penalties based on a plan administrator’s refusal to comply with ERISA’s disclosure obligations, a plaintiff must qualify as a plan participant. See 29 U.S.C. § 1132(c)(1). Thus, if Barton does not set forth a colorable pension claim, he cannot assert a violation of ERISA’s disclosure requirements. See Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir.2004). As this issue turns on the ultimate merits of Barton’s claim for pension benefits, we reverse the judgment for defendants.
III. CONCLUSION
This case ultimately is about burdens— to qualify for his pension, must a former employee who quit working for the company more than twenty-five years ago decipher the corporate, structure of his former employer from documents that were not disclosed to him? Should he have saved all of his pay stubs in the off chance that his employer would demand proof that he met the hours requirement for obtaining a pension? Or should the corporate defen *1070 dant bear this load? ERISA, our precedent, and common sense dictate that the corporate defendant should not lay that arduous task at the feet of former employees. To hold otherwise would essentially reward Lucy for pulling the football away from Charlie Brown, something that we do not believe Congress intended when it enacted ERISA. See It’s Your First Kiss, Charlie Brown (CBS television broadcast Oct. 24,1977).
Accordingly, we REVERSE the judgment and REMAND this matter to the district court so it can apply the now-clarified burden of proof in this case.

. Contrary to the dissent's characterization of Barton’s "sporadic” work history, Barton’s FICA records indicate that he received consistent wages from an ADT-related entity from the fourth quarter of 1967 through his resignation in 1986. See Dissent at 1071. Through 1971, he received additional wages from his service in the Marine Reserves. Also while employed at an ADT-related entity, in the fourth quarter of 1968 he worked briefly for a moving company to earn $162.72 in extra "Christmas money.”

. Barton provided more detailed FICA records during his administrative appeal.

. Although not central to our resolution of this case, we note that on remand, the district court also may wish to consider whether defendants met the standard of meaningful -dialogue in the administrative claims process, including whether the Committee’s denial letters dated January 10, 2012 and June 29, 2012 were written in common-sense language that a lay person could understand or respond to, and whether the Committee sought the information it needed to make a reasoned decision. See Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir.1997); see also Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 870-74 (9th Cir.2008).

. Defendants argue that the absence of recorded service by Barton in their records proves that he did not work for a participating employer and is not entitled to a pension benefit. But they fail to explain why they cannot identify which affiliated companies they approved to participate in their Plans, nor how Barton could obtain such information.

. Section 104(b) illustrates ERISA’s underlying policies of "promoting informed financial decision making” and "protecting the reliance interests of plan participants and beneficiaries.” Peter Joseph Wiedenbeck, ERISA in the Courts 17 (Federal Judicial Center 2008). We do’not address whether the plan administrator here failed to comply with the specific disclosure requirements of section 104(b).

. Defendants cite several cases to argue that Barton has the burden “to provide the Committee with information sufficient to show an entitlement to a. benefit under the plan.” These cases are inapposite. In Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir.1997), thé plan itself allocated the burden to the claimants. Defendants assert for the first time in their supplemental briefing that the 1985 Plan similarly allocates the burden of proof to the claimant. Their argument is based solely on language contained in an informational document entitled “Applying for Benefits and Claim and Appeal Procedures.” While it is not clear from the record whether this document provides terms of the 1985 Plan, it is clear that defendants waived this argument when they failed to raise it in their answering brief. See, e.g., United States v. McEnry, 659 F.3d 893, 902 (9th Cir.2011) (holding an argument waived when available at the time an answering brief is filed but not raised in it). In the other cases, the district court found that the plaintiffs bore the burden of providing evidence of a personal medical problem — information within their possession — to claim disability benefits. See Schwartz v. Metro. Life Ins. Co., 463 F.Supp.2d 971, 982 (D.Ariz.2006); Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 63 F.Supp.2d 1145, 1157 (C.D.Cal.1999), aff’d, 370 F.3d 869 (9th Cir.2004) (holding that it was not improper to place the initial burden on the claimant where the insurance company informed her of the information it needed and advised her to call them if she had questions).

. This does not require defendants to produce records listing entities not covered by their pension plans. Cf. Dissent at 1071 — 72, 1072-,73, It requires only that they reveal which ’ companies did in fact participate in their plans — information they must know to fulfill *1069 ' their fiduciary duty to only distribute pension funds to qualified individuals.