NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 18 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JENNIFER KOTT, | No. 17-16584 |
| Plaintiff-Appellant, | D.C. No. 5:16-cv-03678-BLF |
| v. | |
| AGILENT TECHNOLOGIES, INC. DISABILITY PLAN, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted December 21, 2018
San Francisco, California

Before: M. SMITH, NGUYEN, and BENNETT, Circuit Judges.

Plaintiff-Appellant Jennifer Kott appeals the denial of long-term disability

benefits under an employee benefit plan, Agilent Technologies, Inc. Disability Plan

(the Plan), administered by Sedgwick Claims Management Services, Inc.

(Sedgwick). Kott brought suit under the private right of action provision in the

Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B).

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Reviewing the Plan's denial for abuse of discretion, the district court found in favor of the Plan. We have jurisdiction pursuant to 28 U.S.C. § 1291, and, reviewing the district court's analysis de novo, *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142–43 (9th Cir. 2002), we affirm in part and reverse in part.

In the ERISA context, an administrator abuses its discretion if its "application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). It is also an abuse of discretion "if [an administrator] relies on clearly erroneous findings of fact in making benefit determinations," *Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014) (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993)), or fails to explain why the evidence supporting disability was insufficient to prove the claim. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870–71 (9th Cir. 2008).

We point to three primary reasons why Sedgwick abused its discretion in denying Kott's claims: (1) Sedgwick did not provide Kott with a proper explanation for why it denied her benefits; (2) Sedgwick failed to consider the

simultaneous restrictions on Kott's ability to sit and her ability to stand, which likely precluded her from even part-time work; and (3) Sedgwick included an erroneous factual finding in its denial letter that likely influenced its findings.

1. To qualify for long-term disability benefits under the Plan, Kott must show that she "is continuously unable to perform any occupation for which he or she is or may become qualified." Sedgwick must determine whether Kott is "totally disabled" based on "[o]bjective medical evidence," defined as "evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations." When Sedgwick initially denied Kott's long-term disability claim on January 5, 2016, it pointed primarily to a lack of objective medical evidence; specifically, that there was "no . . . tenderness to palpation over the coccyx," and "no gait alteration or any focal weakness in the lower extremities noted on physical exam." Kott's supplemental medical records, specifically records from Dr. Alan Galitz, appeared to provide the requested information as noted in the February 16, 2016 and March 31, 2016 reports by Dr. Woodley Mardy Davis—finding tenderness at the coccyx and noting significant guarded gait. Yet Sedgwick denied Kott's appeal on April 26, 2016, citing "no substantive physical clinical findings or abnormalities to support your inability to perform any occupation."

It is unclear what Sedgwick meant by "substantive physical clinical findings

or abnormalities." In addition to the radiographs and medical records provided in Kott's initial application, Kott supplied additional records in her appeal. These records included visits with Dr. Justin Low, her primary care physician, who confirmed clinical diagnoses, continued issues with ambulation, and the need for new disability work restrictions. The records also included visits with a pain specialist, Dr. Galitz, to discuss continued back and foot pain and a completion of a chronic pain management program. Overall, the doctors continued to report chronic coccygeal pain and plantar fasciitis, making it difficult to both sit and stand. Without additional explanation from Sedgwick as to the types of records or findings needed, we find that Sedgwick did not "give [] '[a] description of any additional material or information' that was 'necessary' for her to 'perfect the claim,' and to do so 'in a manner calculated to be understood by the claimant.'" *Saffon*, 522 F.3d at 870 (second alteration in original) (quoting 29 C.F.R. § 2560.503-1(g)(1)).

2. Next, Sedgwick never noted nor explained the incongruous restrictions placed on Kott—that she may not have sat for longer than twenty minutes at a time (as restricted by Drs. Lakshmi Madireddi and Low, two of the three physicians to conduct physical exams of Kott), but also may not have stood at all due to plantar fasciitis (as restricted by Dr. Martin Taubman, relying on Dr. Low's findings). Dr. Madireddi found that Kott could have worked part-time beginning November

2015, for four hours a day, twenty hours a week, and should have been able to work full-time by April 2016. Dr. Low generally agreed with Dr. Madireddi, though he narrowed Kott's restrictions for part-time work beginning December 2015 by two to three hours per day, with a maximum of one-hour standing time and fifteen-to-twenty minutes of sitting at one time. Dr. Taubman, after conducting a paper review of Kott's medical records, found Kott "is now documented to be unable to work any but seated duties from 02/10/2016 through 03/01/2016" and "is now documented to be unable to work her regular job." This leaves a period, between at least February 10, 2016 and March 1, 2016, during which Kott was unable to work any sedentary job for more than twenty minutes.

Sedgwick likely considered these restrictions prior to the advancement of her plantar fasciitis, when she was able to stand for one hour in twenty-minute increments. At that point, the restrictions allowed for at least two-to-three hours of part-time work with the assistance of a sit-to-stand workstation. However, with the advancement of Kott's standing restriction, it is illogical that Kott could have worked any sedentary position from at least February 10, 2016 to March 1, 2016. That Dr. Mardy-Davis reached the same conclusion as Sedgwick does not support Sedgwick's findings. Unlike Sedgwick, Dr. Mardy-Davis was not provided with a podiatrist's recommendation on Kott's standing restriction. Dr. Taubman's report

17-16584

was available to Sedgwick, and the incongruous nature of these restrictions warranted consideration.

3.     Lastly, it is undisputed that Sedgwick erroneously stated that Dr. Taubman teleconferenced with Dr. Low, who advised that he did not treat Kott for any foot-related problems. The district court dismissed this erroneous finding based on the conclusion that it was not the sole basis for Sedgwick's outcome. We are not convinced Sedgwick did not rely on this finding.

Sedgwick's denial letter later stated, "From a Podiatry and Pain Medicine perspective, the medical documentation contains no substantive physical clinical findings or abnormalities to support your inability to perform any occupation as of February 10, 2016." Yet medical records from Dr. Low and his referrals were precisely the information that compelled Dr. Taubman to amend his recommendation that Kott be limited to seated duties through March 1, 2016. Dr. Taubman found the additional records detailing continued physical therapy and foot pain substantial enough to support a temporary, yet complete, restriction on standing. By disregarding Dr. Low's treatment history based on the mistaken belief that he did not treat her for foot-related problems, Sedgwick never considered how Kott would be able to work part-time at a sit-to-stand station when she could not stand, and could not sit for longer than twenty minutes at a time.

4.      Additionally, we conclude that the district court properly excluded Exhibits 13, 16, and 17, as well as the decisions by the Social Security Administration.  It is inappropriate to rely on evidence not considered by the plan administrator when denying an appellant's claim, and no procedural error supports consideration of this outside evidence.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006).

We **AFFIRM** the district court's decision to exclude evidence outside of Sedgwick's record at the time of its decision.  We **REVERSE and REMAND** to the district court to send the case back to Sedgwick with instructions to reevaluate its long-term disability determination in light of our ruling.[1]

**AFFIRM in part, REVERSE and REMAND, in part.**  Each party shall bear its own costs.

---

[1] Because our disposition moots the remaining issues on appeal, we need not address them.

*Kott v. Agilent Technologies, Inc.*, 17-16584

BENNETT, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that the district court properly excluded certain exhibits and Social Security Administration decisions as extra-record evidence.

As for the merits of Kott's claim, I would affirm in part and reverse in part the district court's decision to uphold Sedgwick's denial of benefits, and I would instruct the district court to remand the case back to Sedgwick for reconsideration only as to the period of February 10, 2016 to March 1, 2016.

We must review Sedgwick's interpretation of the Plan's "any occupation" clause under the deferential abuse-of-discretion standard. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866 (9th Cir. 2008). This standard "does not mean that the plan administrator will prevail on the merits," but it does mean that we will not disturb Sedgwick's interpretation if it is reasonable. *Conkright v. Frommert*, 559 U.S. 506, 521 (2010). We require plan administrators to engage in a "meaningful dialogue" with claimants, *Saffon*, 522 F.3d at 866, but once that requirement is met, we do not also require that plan administrators provide a meticulous statement of reasons for denying benefits. *See Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014)

1

(explaining that "we will uphold a plan administrator's decision if it is grounded in '*any* reasonable basis,'" in light of "all the circumstances of the case" (citations omitted)); *cf. Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 649 (9th Cir. 2009) ("A plan administrator abuses its discretion if it renders a decision without *any* explanation . . ." (emphasis added)).

I agree with the majority that Sedgwick abused its discretion by not offering any explanation for how Kott could work despite her incongruous sit-stand restrictions during the period of February 10, 2016 to March 1, 2016. I also agree that Sedgwick failed to engage in a "meaningful dialogue" with Kott with respect to this period, as Sedgwick did not explain what further evidence Kott could have provided to demonstrate her total disability. *Saffon*, 522 F.3d at 866.

I disagree, however, with the majority's conclusion that Sedgwick abused its discretion by denying Kott's claim for benefits after March 1, 2016. In its appeal denial letter, Sedgwick accurately noted that Dr. Taubman restricted Kott to sedentary work from February 10, 2016 to March 1, 2016. Kott argues that Dr. Taubman's opinion was based on the most recent physical therapy notes available to him, and thus Dr. Taubman was not opining that Kott would in fact be able to work after March 1, 2016. But it was Kott's burden to establish her prima facie eligibility for benefits under the "any occupation" standard after March 1st. *See Estate of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1065–66 (9th

2

Cir. 2016). In addition, the March 1st end date is roughly consistent with Dr. Low's November 23, 2015 opinion that, based on Kott's coccyx injury and plantar fasciitis, she would be totally disabled until at least February 23, 2016.

On this record, it was reasonable for Sedgwick to deny benefits under the "any occupation" standard for the period of time after March 1, 2016. And Sedgwick's explanation—that "the medical documentation contains no substantive physical clinical findings or abnormalities to support [Kott's] inability to perform any occupation as of February 10, 2016"—was logical as to the period of time after March 1st. The majority acknowledges as much, concluding that "it is illogical that Kott could have worked any sedentary position *from at least February 10, 2016, to March 1, 2016.*" Maj. at 5 (emphasis added). The majority fails to explain how Sedgwick's decision was illogical after that period of time. Rather than properly tailor its remand, the majority provides a remedy that, in my view, will lead to wholly unnecessary litigation for the period of time after March 1, 2016. I believe we should remove that possibility.

Finally, I disagree with the majority that Sedgwick relied on a clearly erroneous factual finding. Even assuming that Sedgwick's reference to the teleconference between Dr. Low and Dr. Taubman was clearly erroneous,[1] there is

---

[1] Sedgwick referenced a teleconference between Dr. Taubman and Dr. Low in which Dr. Low "advised that he did not treat [Kott] for any foot related problems." I am not convinced this reference was erroneous, let alone clearly erroneous. Dr.

a reasonable basis to conclude that Sedgwick did not rely on it. Rather than disregard Kott's foot pain because of the teleconference, Sedgwick in fact recognized Dr.'s Taubman opinion—which was based on Dr. Low's diagnosis—that Kott was restricted to seated work from February 10, 2016 to March 1, 2016. Nor was Dr. Taubman's opinion at odds with Sedgwick's ultimate conclusion that, "[f]rom a Podiatry and Pain Medicine perspective," Kott was not disabled under the "any occupation" standard. Indeed, there is a reasonable basis to conclude that Sedgwick instructed the vocational expert that Kott was restricted to sedentary work *because of* her foot pain.

For these reasons, I would affirm the district court's judgment in favor of Sedgwick as to the period after March 1, 2016. I agree, however, that the district court properly excluded extra-record evidence, and that the case should be remanded to Sedgwick for reconsideration of benefits for the period of February 10, 2016 to March 1, 2016.

---

Taubman in fact reported that either Dr. Low or Dr. Lai (the report mistakenly references both doctors) advised that "he did not treat Kott for foot-related problems." Dr. Taubman also reviewed Dr. Low's examination reports and summarized that Dr. Low "did not specifically treat the foot condition" and again that "although foot pain was included in [Kott's] diagnoses it was not specifically treated." Dr. Taubman's supplemental report relied on medical records from Dr. Low, but those records again reflected Dr. Low's diagnosis rather than his direct treatment of Kott's foot pain.

4